L. BLANCHE VAUGHAN, administratrix, *vs.* ROSEMARY V. SMITH & others (and a companion case [1]).

Middlesex. December 5, 1956. — February 6, 1957.

Present: WILKINS, C.J., RONAN, WILLIAMS, COUNIHAN, & CUTTER, JJ.

*Executor and Administrator,* Compensation, Counsel fees, Widow's allowance, Account.

On the record, a charge of $4,000 made by the widow of an intestate attorney for her services as administratrix of his estate, which was not large and did not present questions of unusual difficulty and in whose settlement she was aided by competent counsel, was reduced by this court to $3,000 on an appeal from a decree on her account. [419–420]

A charge for legal services, even if principally relating to the liability of an intestate's estate for Federal estate tax in view of life insurance proceeds and joint property going to the intestate's widow, was properly made to the estate and payment thereof allowed in the administratrix's first account, leaving the amount of the charge allocable to the widow to be settled in the distribution of the estate. [420]

No error appeared on the record in the dismissal by a Probate Court of a petition to vacate a decree granting a widow's allowance. [420–421]

PETITION, filed in the Probate Court for the county of Middlesex on March 10, 1955, for allowance of an account.

PETITION, filed on December 30, 1955, to vacate a decree granting a widow's allowance.

These matters were heard by *Leggat,* J.

*Stephen P. Weston,* (*Peter F. Hines & Orrin P. Rosenberg* with him,) for Rosemary V. Smith and others.

*Earle C. Parks,* (*Melvin F. Lee & Benjamin Y. Piper* with him,) for L. Blanche Vaughan.

[1] The companion case is Rosemary V. Smith *vs.* L. Blanche Vaughan.

RONAN, J.   These are two appeals, one from a decree allowing the first account of the administratrix of the estate of her husband, John W. Vaughan, and the second from a decree refusing to vacate a decree granting her a widow's allowance.

The intestate, a member of the bar and of the Legislature, died on September 17, 1952, leaving a widow and next of kin but no issue.   She was appointed administratrix on September 26, 1952.   The inventory value of his personal estate amounted to $19,494.90.   Besides, there were life insurance on her husband amounting to $25,000 in which she was named beneficiary, joint bank accounts, and a leasehold in Maine of the value of $600.   Mr. Vaughan had posted a savings bank book to secure a bond to avoid an attachment, and the book was surrendered by the bonding company to the administratrix when the case was discontinued.

Until about February 1, 1954, the estate was represented by Mr. Taylor, a friend of the intestate, who occupied offices in the same building.   He completed most of the litigation pending at the death of Mr. Vaughan and also performed almost all the services to be performed in settling the estate in the usual course up to the time he quit.   In accordance with an agreement made with the administratrix he retained all fees received on Mr. Vaughan's cases.

Three issues were raised at the hearing upon the account, first whether the administratrix should be allowed $4,000 for her services as administratrix, second whether she alone should be charged the fee amounting to $2,500 paid as counsel fees, and third whether the allowance of $3,000 as a widow's allowance should be reduced.

An examination of the record does not disclose that the settlement of this estate presented any questions of unusual difficulty.   At the hearing she furnished a full and complete statement of her activities as administratrix.   Her duty at the commencement of her administration was to familiarize her counsel with the facts connected with her husband's practice and property.   His practice, however, was not ex-

tensive, and he possessed no great amount of property. She made a thorough examination of his papers and files. She spent much unnecessary time in an unsuccessful search for a will. She was reluctant to disclose the existence of the life insurance. It was uncertain whether the estate would come within the Federal estate tax, U. S. C. (1952 ed.) Title 26, §§ 811, 812. The estate was regarded as a "borderline" one until the taxing authorities decided in 1955 that no tax was due. Although the estate was represented by a skilled and experienced attorney, she seems to have been uncoöperative and he withdrew about February 1, 1954. The question is what will be fair and reasonable compensation for the services she rendered. We are of opinion that, in the light of all the circumstances, she should have $3,000. *O'Riorden, petitioner,* 244 Mass. 472. *King* v. *Grace,* 293 Mass. 244. *Bearse* v. *Styler,* 309 Mass. 288. *McLaughlin* v. *Old Colony Trust Co.* 313 Mass. 329. *Reilly* v. *McAuliffe,* 331 Mass. 141.

The administratrix seeks the allowance of $2,500 paid to counsel who succeeded Mr. Taylor. The appellants do not attack the amount of the charge but contend that the principal service rendered related to the issue whether the estate was liable for the Federal estate tax in view of the amount of life insurance and joint deposits which came to his widow personally upon the death of her husband, and that the charge rendered for such services should have been allocated to her and not paid by her out of the estate. It was not until February 16, 1955, that the taxing authorities decided that no tax was due. Until then it could not be known whether the tax would be imposed and, if it was, the administratrix would be the one liable to pay it. Counsel properly charged the estate. The estate is about ready to be closed and the distributive shares to be determined and paid. What part of the counsel fees, if any, should be chargeable to her can then be easily and definitely settled.

The third matter challenged at the hearing of the account was the widow's allowance which was granted upon June 8, 1953. It appears from the many colloquies by the judge

with counsel that he was not inclined to disturb this allowance. This was correct. In *Litchfield* v. *Cudworth*, 15 Pick. 23, 30, it is said, "If any person be dissatisfied with the allowance by the Probate Court, his remedy is by appeal. And we cannot collaterally inquire into the exercise of this discretionary power, however disproportionate to the whole estate the allowance may seem to us." Then *Newell* v. *West*, 149 Mass. 520, 521, states, "It was correctly ruled by the master, that the question whether the allowance to the widow should have been made by the Probate Court was not open in a hearing upon the administrator's account . . . ."

The account in all its aspects was allowed on December 13, 1955, and the instant petition to vacate the decree of June 8, 1953, was filed on December 30, 1955. That decree was subject to appeal, if one had been seasonably taken. See *Litchfield* v. *Cudworth*, 15 Pick. 23; *Wright* v. *Wright*, 13 Allen, 207; *Allen* v. *Allen*, 117 Mass. 27; *Dale* v. *Hanover National Bank*, 155 Mass. 141; *Hooker* v. *Porter*, 273 Mass. 316. No such appeal was taken but upon the allegations of the petition the Probate Court had jurisdiction to grant the allowance and nothing was alleged which would give the court authority to revoke it. *Renwick* v. *Macomber*, 233 Mass. 530. *Kennedy* v. *Simmons*, 308 Mass. 431, 432–433. *Reynolds* v. *Remick*, 333 Mass. 1, 9–10.

The decree allowing the account is to be modified by reducing the item for services as administratrix from $4,000 to $3,000 and making the corresponding changes in the account and as modified is affirmed and the decree dismissing the petition is affirmed.

*So ordered.*