ALONZO WRIGHT PERRY *vs.* HERBERT G. PERRY & others, trustees, & others (and two companion cases[1]).

Plymouth.   May 6, 1959. — June 30, 1959.

Present: WILKINS, C.J., RONAN, SPALDING, COUNIHAN, & WHITTEMORE, JJ.

*Trust,* Removal of trustee, Trustee's accounts, Receivership, Counsel fees. *Corporation,* Corporate entity, Officers and agents, Family corporation. *Fiduciary. Probate Court,* Accounts, Revocation of decree, Stipulation, Petition, Equity proceeding, Findings by judge, Counsel fees. *Equity Pleading and Practice,* Bill, Amendment. *Supreme Judicial Court,* Jurisdiction. *Receiver. Guardian,* Guardian ad litem. *Attorney at Law.*

In a proceeding by a beneficiary of a testamentary trust of shares of stock in a family corporation seeking removal of the trustees, of whom one was a bank and the other two, sons of the testator, were a majority of the corporation's directors, one of such sons being the "absolute head" of the corporation, where no fraud or bad faith on the part of the respondents was shown and it appeared that the overall management of the corporation had been able and successful, no error in a decree declining to remove the trustees was shown by reason of loans made by the corporation to the testator's sons, of the formation of subsidiary corporations owned and controlled by the corporation, of dealings between the corporation and other corporations wholly or partly owned by one of the respondent sons, of employment of members of the family by the corporation, or of salaries paid to its executives. [474, 478–479]

No fraud or manifest error was shown in support of a petition by a beneficiary of a testamentary trust of shares of stock in a family corporation for reopening of accounts of the trustees, two of whom were a majority of the corporation's directors, which had been allowed after favorable reports by guardians ad litem who had had opportunity to make appropriate inquiry into the affairs of the corporation, although the accounts did not reflect its internal management. [479–480]

---

[1] The companion cases are Alonzo Wright Perry *vs.* Herbert G. Perry & others, trustees, & others, and Alonzo Wright Perry *vs.* Herbert G. Perry & others, trustees.

Upon appeal from a decree denying a petition by a beneficiary of a testamentary trust of shares of stock in a corporation seeking removal of the trustees, two of whom were a majority of the corporation's directors, where the petition did not raise the issue of certain liability of one of such two respondents to the corporation, a stipulation by him that if the "Supreme Judicial Court agrees" that a stated sum which a master had found was due from him to the corporation "is due" he would pay it did not show error in the decree in that an order for payment of that sum was not included therein nor bring before this court such issue of his liability; nor, in the circumstances, was it an appropriate case for an amendment of the pleadings to add such issue. [480-482]

Impropriety in the salaries paid to executives of a corporation was not shown by reason of an arrangement whereby certain executives drew salaries which, standing alone, might be thought excessive but other executives drew salaries substantially less than they were entitled to and the total for executives' salaries was reasonable. [483]

On the record no basis appeared for a corporation's foregoing interest on loans made by it to its officers, not for its benefit, which were outstanding for substantial periods, and the borrowers should be charged with interest at an appropriate rate. [483]

In proceedings involving a corporation and a testamentary trust of shares of its stock, two of whose trustees were a majority of the corporation's directors, no occasion for the appointment of a temporary receiver of the assets of the trust appeared on the record. [483]

The matter of removing trustees of a testamentary trust was within the probate jurisdiction of a Probate Court and was irregularly made the subject of a so called equity petition. [484]

In proceedings in a Probate Court by a beneficiary of a testamentary trust of shares of stock of a corporation, in which the trustees, two of whom were a majority of the corporation's directors, and the corporation were respondents and the petitioner sought removal of the trustees, the appointment of a temporary receiver of the assets of the trust, and reopening of certain allowed accounts of the trustees, the judge in his decrees disposing of the proceedings should not have provided that one half of the total allowances for counsel for the various parties be charged to the petitioner and one half be paid from the funds of the trust, but should have provided that the allowance for counsel for each party be paid by that party, the allowance for the trustees' counsel to be paid from the funds of the trust; this court stated certain considerations and procedures to guide the Probate Court in a redetermination of the allowances for counsel under G. L. c. 215, § 39A, and a fee to be paid from the funds of the trust to a guardian ad litem, including an apportionment of the cost of the defence between the trust and the corporation and security for the payment of the allowance to be charged to the petitioner. [484-486]

PETITIONS filed in the Probate Court for the county of Plymouth on September 17, 1952, July 28, 1954, and September 14, 1956.

Following confirmation of the report of a master, decrees were entered by *Stone,* J.

*J. Elmer Chisholm,* (*Isadore O. Goverman* with him,) for the petitioner.

*George B. Rowell,* (*Winslow A. Robbins, Franklin N. Cunningham,* & *Maurice J. Murphy* with him,) for the respondents.

WHITTEMORE, J. The records in these three cases, including a master's report, show these facts: Alonzo Wright Perry (hereinafter sometimes referred to as grandson Alonzo) is the son and only child of Butler F. Perry, who died April 9, 1952. Butler had been entitled for his life to income under two trusts of stock of A. W. Perry, Inc. (the corporation), a Massachusetts corporation engaged in the business of owning and managing real estate, created by the will of Butler's father, Alonzo W. Perry, late of Rockland, who died in 1928. The trustees were Butler's brothers, Winthrop I. Perry and Herbert G. Perry, and Old Colony Trust Company. Winthrop and Herbert were two of the three directors of the corporation and all its business was conducted under Herbert's sole supervision. Butler was a director until 1932. The trust under article 18 was of 1,200 shares for Butler's benefit for his life, distributable on his death, as the event occurred, to his son. There was a similar trust under article 19 of 800 shares for Winthrop's benefit for his life. The other trust in which the petitioner is interested is the residual trust under article 20 for the benefit of the testator's sons and other issue. Trustees' accounts 1 through 6, under articles 18 and 20, covering the period from the establishment of the trusts July 14, 1930, through July 20, 1948, were allowed prior to Butler's death, after due notice and the appointment, and receipt of the favorable reports, of guardians ad litem. Each account bore Butler's assent. These accounts showed the holding of shares of A. W. Perry, Inc., the receipt of dividends, the distribution of income and the other payments made by the trustees.

Grandson Alonzo on September 17, 1952, filed in the

Probate Court a "petition to remove trustees [under articles 18 and 20] and for an accounting." It contained allegations that the trustees in control of the corporation had acted fraudulently and negligently in derogation of their trust duties. Amendments joined issue of the testator, the executrix of Butler's estate (his widow), the corporation, and also Welch Company, a family corporation of Herbert, and enlarged the prayers to ask that each of the corporations be ordered to turn over to the trustees all illegal and improper profits. The executrix answered that she had no claim and "is satisfied with the accounting," and on June 12, 1956, her "plea . . . that the estate of . . . Butler . . . has been settled and that she has been discharged" was sustained and she was "discharged as a respondent . . .."

Grandson Alonzo filed on July 28, 1954, a petition for the appointment of a temporary receiver of the assets of the trust and on September 14, 1956, a petition that accounts 1 through 6 under articles 18 and 20 be reopened and disallowed and the trustees surcharged.

The probate judge, in the proceedings to remove trustees, entered an order stating the appointment of a master. The same attorney was also appointed auditor in respect of filed but unallowed accounts of the trustees (7 through 13 under article 20 for the period ending July 20, 1955, and 7 through 10 under article 18 for the period ending June 13, 1952).

A master's report was confirmed and a decree was entered on May 5, 1958, which ordered that the prayers in the petition for removal of trustees "be, and hereby are, denied" and allowed counsel fees, costs and expenses and a guardian ad litem's fee. The petitioner appealed from the decree generally and the trustees and adult beneficiaries appealed therefrom in respect of certain aspects of the allowances.

On March 3, 1958, the probate judge entered a decree which ruled that the allowance of accounts 1 through 6 was res adjudicata of all matters which might have been tried at the time each decree was entered and denied the petition to reopen the accounts. The petitioner appealed.

The judge on April 16, 1958, denied the petition for appointment of a temporary receiver and the petitioner appealed.

1. Nothing in the findings supports the view that it was error to decline to remove the trustees. The report shows that the trustees carried on the family business in certain respects as it had been conducted during the lifetime of the testator, and that the overall management had been able and successful with the result that there was a very substantial increase in the worth of the corporation.

The findings of the master in respect of conduct on which the petitioner principally relies as ground for removal may be summarized as follows: Continuing a practice approved by the testator during his life, the corporation made loans to his three sons from time to time. Some of the loans were for the year end accommodation of the corporation. Except as to three items of Herbert's, totaling $105,000, neither Herbert nor Winthrop paid interest. Winthrop lent the corporation sums from time to time without charging interest. When grandson Alonzo received distribution of the 1,200 shares held under article 18 on the death of his father in 1952, he, then living in Mexico, appointed J. Elmer Chisholm, Esq., his attorney in fact, under a general power, and the latter borrowed from the corporation for Alonzo $105,000, repayable $10,000 a year, but only out of dividends on the 1,200 shares, with interest at four per cent a year. Herbert, with his daughters, owned another corporation, Welch Company. The corporation paid insurance premiums due from Welch Company in the total sum of $73,723.40, or about $4,000 a year for eighteen years, and Welch Company repaid the advances. The corporation had no security other than an open account and received no interest. In 1940 and through March, 1942, the corporation lent Welch Company sums totaling $85,000 without security or interest. The loans were repaid. Herbert was the sole owner of Converse Building, Inc., by virtue of a bequest from the testator of such shares as Herbert did not already own, and was known as such sole owner to the trustees. The corporation made

advances to Converse. At the end of 1936, the corporation owed Converse $26,000 plus and Converse owed it $40,000 plus. The directors voted to charge off the balance of $14,121.55 having determined the claim worthless. But Herbert had assumed the debt and therefore the amount is due to the corporation. (The insufficiency of the evidence to support the finding was specified in an objection, and the evidence was summarized. It included the testimony of Herbert that "he expected to pay every dollar that building lost," and testimony that Herbert had more coming to him as salary than was charged off.) The corporation bought coal from Welch Company from 1937 through 1948 in substantial amounts and in small amounts thereafter through 1953. The prices were at market; there was an overcharge, "which could very well have been through inadvertence or mistake," of $3.54. Herbert, because of his interest in Welch Company, profited, but the master could not find the amount. Francis W. Perry, son of Winthrop, was employed from 1935 through 1955. A. P. Wilcox, son-in-law of Herbert, was employed from 1933 through 1955. J. H. Spurr, son-in-law of Herbert, was employed from 1943 through 1955. "[F]rom 1946 Herbert . . . and Winthrop . . . drew nominal amounts in salaries and . . . the difference between the drawings and the amounts of the salaries [to] which they would be entitled . . . were added to the salaries of Francis W. Perry, A. P. Wilcox and J. H. Spurr. . . . Whether . . . Herbert . . . and Winthrop . . . legally had the right . . . [to do this] becomes a question of law." "Reasonable salaries were paid to the executives of A. W. Perry, Inc., before the year 1947. From 1947 on, the increases could be called excessive were it not for the fact that the amount of business done . . . showed a total of executive salaries amounting to less than five per cent and if material, I find that five per cent is the usual amount charged for executive salaries so, therefore, I am impelled to find that under the circumstances said increases were not unreasonable." In the years 1947 through 1955 the questioned salaries were in the range of $15,000–$17,500. Spurr was paid

$20,000 in 1948. Each of the three men had complete charge of one or more buildings. Herbert's salary was $2,900 in each year from 1948 through 1953, and was $2,700 in 1954; Winthrop's was $3,500 from 1948 through 1951 and $2,500 thereafter through 1954. Earlier they had drawn salaries much in excess of those paid to the junior executives. R. B. Woodsum, an employee who was elected director to succeed Butler in 1932, drew $15,000 in each year from 1948 through 1954. Francis W. Perry was in the service from 1942 to 1945. The directors paid him $3,000 a year, and on his return in 1945 voted and paid him a bonus of $10,000. "While this was liberal treatment of an employee, I find that under the circumstances the payment was made in good faith . . . and it was not unusual for large concerns to make payments of the kind herein set out. . . . I find no evidence of similar payments to other employees." On Butler's resignation in 1932, he was paid over a five year period $33,600 "in the nature of a pension fund for a retired employee" which the petitioner contends was unearned salary for which the trustees should be charged. Herbert was the "absolute head" of the corporation. The Old Colony relied on Herbert for the running of the business of the trusts, the will having named him "managing trustee." Dividends were not paid until 1944. "The buildings owned by the corporation at the time of the death of the testator were assessed for $4,000,000, the book value being $4,926,585.51, less depreciation of $472,287.05, leaving a net book value of $4,454,298.46 . . . and during the 1930's the values of said buildings decreased substantially, but as a result of the management of the corporation by Herbert G. Perry, and the other officers, the real estate held by the corporation as of the time of the hearings before me, were assessed for approximately $7,500,000. Large amounts were paid in connection with the settlement of the testator's estate to cover taxes, administration expenses and related items, and since the elimination of certain heavy lease problems of the 1930's, the following dividends have been paid . . . [1944–1946, $6 per share; 1947–1955, $12 per share — a

yearly total of $179,520]." The buildings owned in 1955 were shown on the certified accountant's statement at over $9,000,000. The annual depreciation was taken "in accordance with generally accepted corporate accounting practices"; "[t]here is no evidence that the corporation suffered any harm by following this business practice" and the funds so built up were used as part of the assets of the business. On April 16, 1952, Herbert told Mr. Chisholm that the 1,200 shares of the article 18 trust had a value of $180,000. The trustees had always carried the shares at $255,000 and "the real value was substantially greater . . . ." The officers and directors were obligated to consider the interests of all the stockholders in determining any amount to be paid by the corporation for shares offered by grandson Alonzo. The petitioner sought employment from Herbert in 1935 and was employed at Welch Company, but after twice using a company automobile for personal use contrary to orders and proving unsatisfactory in the lumber shed he was discharged. While the master's hearings were in progress Woodsum, at Herbert's request, made at the suggestion of the latter's attorney, went to Mexico to see the petitioner without consulting the petitioner's attorney. If it was for settlement purposes, testimony of what happened would be inadmissible. "[N]o particular harm was done to the petitioner's rights" although "[i]t would have been in better taste not to have sent Mr. Woodsum to Mexico . . . ." The corporation in 1941–1943 paid Old Colony Trust Company $3,000 because it had to keep trust books and there were no dividends from which it could take its expenses. Upon the payment of the first dividend in 1944 $1,000 was repaid. These transactions did not show in the trustees' accounts.

As the respondents point out, many of the allegations of the petition were not sustained. In this connection, the following findings may be noted. Neither of the individual trustees nor anyone else profited personally from the formation of the subsidiary corporations owned or controlled by A. W. Perry, Inc., as such, although A. W. Perry, Inc., benefited greatly, and as a result the individuals who were

stockholders and employees benefited. There was no impropriety on the part of the officers and directors of A. W. Perry, Inc., in the investments made in various buildings from 1948 to 1955. The compensation of the trustees was reasonable at all times. Sales made in 1945 of property at 10 Tremont Street and the United States Hotel properties were warranted by the return from the properties and the trustees acted in good faith. Herbert, as an insurance broker, placed large amounts of insurance for the corporation and the trusts and gave them his brokerage. He made no profit on insurance placed with another broker after 1942.

The testator had directed in his will that the trustees were "to use every power which they may be able to exert to continue the said A. W. Perry, Inc. as an incorporated company in the business for which it was incorporated as long as it is reasonably possible so to do." The testator in article 1, in leaving to Herbert his shares in Converse, paid tribute to his "beloved son, Herbert G. Perry . . . who has developed rare business ability and who has been such a help to me in my business for twenty-six years . . . ."

The findings show no basis for a charge of fraud or bad faith or a conclusion that the trustees were not competent or the proper persons to carry out the trusts imposed in them. *Shirk* v. *Walker*, 298 Mass. 251, 259–260. *Garvey* v. *Garvey*, 150 Mass. 185. *Rogers* v. *Rogers*, 258 Mass. 228, 230. *Chopelas* v. *Chopelas*, 303 Mass. 33, 38. See, on the discretion of the probate judge, *Shirk* v. *Walker*, *supra*. Compare *Scott* v. *Rand*, 118 Mass. 215, 217; *Wilson* v. *Wilson*, 145 Mass. 490, 492; *Barbour* v. *Weld*, 201 Mass. 513; *Comstock* v. *Bowles*, 295 Mass. 250, 257–260.

There is no basis on the findings for disregarding the corporate entity in determining the obligations of the officers of the corporation who were also trustees. See *Anderson* v. *Bean*, 272 Mass. 432, 444–445; *Green* v. *Philadelphia Inquirer Co.* 329 Pa. 169, 174; 39 Va. L. Rev. 505, 510–511. Compare *Matter of Hubbell*, 302 N. Y. 246, 254–255; *Matter of Tuttle*, 4 N. Y. 2d 159; *In re Trust under will of Clark*,

204 Minn. 574, 581–582; 24 Minn. L. Rev. 107. This corporation existed for a proper business purpose in accordance with the testator's wishes; several members of the family were stockholders in their own right. While the obligation of directors in respect of the management of the corporation is in important respects like that of trustees (*Durfee* v. *Durfee & Canning, Inc.* 323 Mass. 187, 196), the directors are not barred from receiving appropriate salaries, or employing relatives, if they act in the best interest of the corporation (*Black* v. *Parker Mfg. Co.* 329 Mass. 105, 116–117; Scott, Trusts [2d ed.] § 170.22) and are not barred from dealing on fair business terms with another corporation which is controlled by one of them. See *Murphy* v. *Hanlon,* 322 Mass. 683, 686; *Rosencrans* v. *Fry,* 12 N. J. 88, 102–103.

The policy of the corporation as to depreciation, reserves and dividends is largely for the determination of the directors in good faith. The findings do not require the conclusion that there was intent to discriminate against the petitioner. Another explanation for the diverse relationships to the corporation of the men of his generation in the family is equally likely. We do not suggest that failure to demand interest on loans or advances to or for the account of officers or others, or the release of the Converse balance, was beyond seasonable attack by a nonconsenting stockholder or beneficiary. See *Anderson* v. *Bean,* 272 Mass. 432, 447–448. But there is no basis for concluding that there was more than an unintentional disregard of the legal requirements or of the necessity, even in a family corporation, for formal action to record the proper basis, if it existed, including equitable offsets, of action taken in respect of corporate funds and rights. See *Samia* v. *Central Oil Co. of Worcester, ante,* 101, 126–127.

2. There was no error in the dismissal of the petition to reopen accounts 1 through 6. *Reynolds* v. *Remick,* 333 Mass. 1, 6–8. *Old Colony Trust Co.* v. *Mabbett,* 334 Mass. 412, 416. See *Anderson* v. *Bean,* 272 Mass. 432.

Even if notice were to be taken of the facts found in the master's report (which may not be done, although the judge

made a reference thereto) so that there would be a record of findings against which to test the decree of dismissal, there is nothing in those findings to show manifest error in the decree or fraud of the kind which may be the basis of revocation. See *Reynolds* v. *Remick, supra,* p. 10 ("fraud which induced the court to take a jurisdiction which it did not have" or which deprived "an interested party of his day in court").

The fact that the internal management of a corporation was not referred to in the accounts does not affect the result. The reports of guardians ad litem for the third through sixth accounts (1942–1948) show, as the petitioner admits, that corporate records deemed by the guardians relevant to the application of cash dividends were furnished them, and show that the guardians were aware of the dual positions of Herbert and Winthrop. Although the only inquiry made by the guardians was in respect of the propriety of the allocation of dividends, the reports are confirmatory of the fact that there was opportunity to make such inquiry as was deemed appropriate. We think that there was a like opportunity in respect of the accounts 1 and 2 (1930–1942) although it appears that the guardian did no more than examine the accounts, the vouchers and the securities.

Recognizing that a beneficiary of a trust of shares in a family corporation may in appropriate proceedings force an examination of the corporate affairs, and also the equivalent of a stockholders' suit (see 86 U. of P. L. Rev. 136, point 4, *infra*), we think that, under our statute, the right to do so on this record ended with the allowance of the accounts for the period covered by them. The filing of accounts in the form shown was not fraud which deprived any interested party of his day in court.

3. On recommendation of the guardian ad litem appointed for the petition to remove trustees, the so called equity proceeding, Herbert stipulated as follows in respect of the $14,121.55 found due from him to the corporation: "Now comes Herbert G. Perry, one of the respondents in the above entitled matter and stipulates and agrees that in the event

the Supreme Judicial Court agrees that the sum of $14,121.55 referred to . . . [in the report as] confirmed . . . is due from Herbert G. Perry to A. W. Perry, Inc., . . . Herbert G. Perry will pay such sum with interest at four per cent to said A. W. Perry, Inc., forthwith upon the entry of the rescript and obtain a receipt therefor and file the same with Plymouth County Probate Court in the Estate of Alonzo W. Perry, Docket No. 37,989."

The issue referred to in the stipulation is not before us. The only appeal to which it is relevant is the petitioner's appeal from the decree which denied the prayers in the so called equity petition. There was no error of law in declining to include in that decree an order that Herbert pay to the corporation the sum stated in the stipulation. The stipulation was requested by the judge, in part at least we take it, because of doubt, which the guardian ad litem had expressed, as to the right of the judge to make such an order on the pleadings.

The point was well taken and is conclusive. It is unnecessary to set out the allegations of the petition. They did not state the equivalent of a stockholders' bill for recovery by the corporation from a controlling officer. The petition did not refer to the Converse matter. The prayers which were closest in relevance asked that the court determine the damage suffered by the trusts as a result of the actions of the trustees in the operation of the corporation and the improper profits of the trustees and that they be surcharged therefor and for "any other damages suffered hereunder" and that the corporation be ordered to turn over to the trustees all illegal and improper profits. The respondents objected to so much of the master's report as dealt with the claim on the grounds of no evidence on which the findings could be based, absence of any writing and the statute of limitations, and moved to strike the findings. We note that Herbert's counsel, in colloquy, expressly waived the insufficiency of the pleadings to support a recovery by the corporation. But that did not serve to present us with a review-

able issue. This court may not, by stipulation, be asked for an advisory opinion or made arbitrators. We do not think that an amendment is in order to add to the already multifarious petition (see point 7, *infra*) what would be, in effect, the statement of a minority stockholder's claim. We do not construe the stipulation to waive affirmative defences, and we may not conclude that on a trial of all relevant issues it could be ruled that the sum stated now "is due" from Herbert to the corporation, or was due in 1952, based on what had happened in 1936. This petition is concerned with the rights of the petitioner as beneficiary. His right, in that capacity, to require that the corporation pursue this claim is foreclosed by the allowance of the accounts. The petitioner admits this, saying in his brief that the amount "cannot be recovered unless said accounts are reopened and disallowed."

4. An auditor's report in respect of the unallowed accounts, filed June 14, 1957, stated that the "action was tried before me with [the] equity petition" and, in view of the differing functions and the possibility of conflicting conclusions, requested that the filing of the auditor's report might stay in abeyance until final order or decree on the report as master. We conclude that no other report has been filed. The issue has been fully litigated of whether the corporation has any rights against its officers based on conduct of the corporation in the period after July 20, 1948, which the petitioner, as beneficiary, may require to be enforced in appropriate proceedings. In the circumstances, that is an issue to be dealt with in the auditor's report. See *Matter of Horowitz*, 297 N. Y. 252, 258; *Matter of Hubbell*, 302 N. Y. 246, 254–255, 259–260; Cahn, Estate Corporations, 86 U. of P. L. Rev. 136. As to rights of stockholders in a family corporation, see *Samia* v. *Central Oil Co. of Worcester*, *ante*, 101, 112; *Ashley* v. *Keith Oil Corp.* 73 F. Supp. 37 (D. Mass.). Nevertheless we think we should state our views of that issue as judged on the facts found in the master's report. The questioned items of substance appear to be salary payments and two loans totaling $35,000 made

to Herbert in 1951, without interest, and outstanding for over seven months. We think the master's finding that salaries were not excessive is justified. We do not think that there is a basis for financial recovery in the informal arrangement whereby the younger men were paid more than might otherwise have been voted because Herbert and Winthrop drew small sums. But on the facts before us no basis appears for the corporation to forego interest on loans to officers which were outstanding for any substantial period and were not made for the benefit of the corporation. The master's finding that interest should be at the rate of four per cent (because it was the rate charged to grandson Alonzo) is justified on the record.

5. There was no error in denying the petition for the appointment of a temporary receiver. *Mount Hope Finishing Co.* v. *Daylor*, 335 Mass. 84, 86–87. *Caputo* v. *Board of Appeals of Somerville*, 330 Mass. 107, 111.

6. We have considered all the issues argued by the petitioner and have examined all the findings to which he has referred in his brief including the issues and findings not mentioned herein.

7. We come to the allowances, which were made under G. L. c. 215, §§ 39B and 45, and were as follows: To petitioner's counsel Mr. Chisholm, costs and expenses $15,325.13, counsel fees $45,000; to co-counsel for the petitioner, costs and expenses $148.08, fee $15,000; attorneys for the respondents, costs and expenses of $2,892.57 and fee of $70,000; to counsel for Welch Company, costs, expenses and fee, $7,500; to the guardian ad litem $30,000. The decree provided that the one half of the total of the allowances to counsel charged to the petitioner "be assessed . . . against the 1,200 shares of . . . [his corporate stock] pledged to the A. W. Perry, Inc., for a loan of $105,000," and enjoined the petitioner from disposing of the shares pending payment.

For a reason to be stated there must be a further hearing in the Probate Court in respect of the allowances. We state considerations relevant to that hearing.

The proceedings were irregular. As a petition to remove trustees (the final decree so described it and in workable substance that is all it was) the petition was within the probate jurisdiction of the court and a proceeding in equity did not lie. *Bennett* v. *Kimball,* 175 Mass. 199, 200. See *Storer* v. *Coggan,* 260 Mass. 515, 516; *Webster* v. *Franklin County Trust Co.* 313 Mass. 401, 403; *Thornton* v. *McWalter,* 329 Mass. 768, 769. A petition that trustees account for alleged profits would also raise an issue for the probate side. *Green* v. *Gaskill,* 175 Mass. 265, 268. See *Russell* v. *Shapleigh,* 275 Mass. 15, 19. As finally amended the bill was multifarious and the demurrers could well have been sustained at the threshold on this ground, if not on others. *Bennett* v. *Kimball,* 175 Mass. 199, 200. So far as the matter was on the probate side, a master could not be appointed, but that issue has been waived. See *Burrell* v. *Whiting,* 324 Mass. 243, 245.

The judge, in respect of allowances, found that "the greater portion of this litigation was without proper foundation and justification and . . . the trustees were justified in employing counsel to defend against all of the allegations made . . . ." This was in a "Report of Material Facts" filed in response to a request of the petitioner under G. L. c. 215, § 11. We rule that in the circumstances the substantive facts were determined by the confirmed master's report and there was no occasion for findings by the judge, and we have confined our attention to the master's findings of such facts. We note, however, that the judge's findings are generally in accord. The judge's findings in respect of the allowances are of course relevant. It is perhaps purely speculative whether other or further pleadings by the respondents or other action by the judge could have shortened the proceedings in view of the possible relevance of all acts of corporate management to the issue of removal of the trustees.

We think this is not a case where any part of the petitioner's costs and expenses should be paid from the trust and that it is a case for the payment by each party of the fees and expenses of his own counsel — those of the trustees'

counsel to be paid from the trust. See *Goodrich* v. *Henderson*, 221 Mass. 234, 237; *Commissioner of Ins.* v. *Massachusetts Acc. Co.* 318 Mass. 238, 241; *Miller* v. *Stern*, 326 Mass. 296. Compare *Brayton* v. *Stoughton*, 335 Mass. 321. The decree of the judge had nearly this effect, disregarding the fee to counsel for the Welch Company, and we think the applicable principles should not be obscured by ordering each party to pay part of the cost of his adversary.

The allowances, except to the guardian ad litem, should be made under G. L. c. 215, § 39A.[1] The conduct of the corporation was the principal subject matter of the extended hearings. It is not unreasonable that in large part the cost of the defence be borne by the trust, the only assets of which are shares of stock of the corporation. But some of the expense of defence is properly to be borne by the corporation directly, for it was a party sought to be charged. This should be in mind in fixing the allowance to counsel for the respondents to be paid by the trust. The expenses and counsel fees of Welch Company should be borne by that respondent. No objection in terms has been made to that award, but the appeal of the respondents in respect of the apportionment of the allowances brings its basic premise before us for review. The fee to the guardian ad litem, as the judge ordered, should be paid from the trust assets (*Goodrich* v. *Henderson*, 221 Mass. 234, 237), and the "strictly conservative principles" (*Commissioner of Banks, petitioner, in re Prudential Trust Co.* 240 Mass. 478, 485) appropriate in such cases should be applied. See *Lewis* v. *National Shawmut Bank*, 303 Mass. 187, 191, and *Hayden* v. *Hayden*, 326 Mass. 587, 596–597. Since the parties will be

[1] "At any time during the administration of an estate . . . the probate court . . . [may] determine the compensation and expenses of an attorney for services rendered to the estate or to its representative or to a devisee, legatee, distributee or any other person interested therein. . . . Notice of the application shall be given in such manner as the court shall direct. . . . [T]he compensation shall be awarded on an equitable basis in accordance with the size, importance, complexity and difficulty of the matters involved and the time spent thereon. The court may direct payment thereof from the estate generally or from funds in the hands of the representative of the estate and belonging to any legatee, devisee, distributee or other person interested therein. . . . For the purposes of this section, the term 'estate' shall be deemed to include trusts . . . and all other relationships involving the administration of property by fiduciaries."

paying their own attorneys, chosen by them, and the awards will be under § 39A, we do not meet the full force of the special limitations applicable under the principle stated in the *Lewis* case. We think, nevertheless, that, although not specified in § 39A, the results secured remain relevant (see *Cummings* v. *National Shawmut Bank*, 284 Mass. 563, 569; *Miller* v. *Stern*, 326 Mass. 296, 303) and that where the fees are to be paid by a trust fund, the interests of all beneficiaries must be considered in determining what is an "equitable basis" under § 39A.

Section 39A requires notice and that necessitates a further hearing and the appointment of a guardian ad litem. Perhaps a stipulation approved by the judge will serve to make available at that hearing the evidence already received on the issue of the amounts to be awarded. The allowances are to be determined in the light of the foregoing considerations, with due regard to the evidence and the contentions of interested parties at the hearing, and in the exercise of the reasonable discretion of the probate judge. See *Day Trust Co.* v. *Malden Sav. Bank*, 328 Mass. 576, 580; *King* v. *Grace*, 293 Mass. 244, 251; *Richardson* v. *Wolcott*, 323 Mass. 693, 695; *Williams* v. *Howard*, 330 Mass. 323, 326; *Vaughan* v. *Smith*, 335 Mass. 418, 420–421. Only after the required hearing could there be a record on which we should review the exercise of that discretion but we rule that in no instance shall the allowance exceed the amount thereof fixed in the decree before us. Whatever payment is ordered from the petitioner to his counsel may be secured as now provided in the decree (that is, from the 1,200 shares not in the trust), only if the petitioner has had express notice and an opportunity to be heard not only on the amount but also on the proposal to obtain for counsel the equivalent of an equitable attachment. In view of the spendthrift clause applicable to the trust, and the judge's justified view of the litigation, we think the decree should not provide for any payment to the petitioner's counsel by the trustees from funds payable by them to the petitioner under article 20. See Scott, Trusts (2d ed.) § 157. 3; G. L. c. 215, § 39A.

8. The decrees denying the petition to reopen the accounts and denying the petition for the appointment of a temporary receiver are affirmed. The decree dismissing the petition for removal of the trustees and for other relief is vacated, and after notice and hearing, a decree of dismissal is to be entered with allowances determined in accordance with this opinion.

*So ordered.*