25 Mass. App. Ct. 645                                    645

Jet-Line Services, Inc. *v.* Board of Selectmen of Stoughton.

JET-LINE SERVICES, INC. *vs.* BOARD OF SELECTMEN
OF STOUGHTON.

No. 87-791.

Norfolk.   March 11, 1988. — April 20, 1988.

Present: ARMSTRONG, KAPLAN, & DREBEN, JJ.

*Practice, Civil,* Interlocutory appeal, Injunction. *Injunction.*

A single justice of this court correctly exercised his discretion to continue in
    effect a temporary restraining order staying the action of a town's board
    of selectmen revoking permits thought necessary for the storage of oil
    at the plaintiff's hazardous waste treatment facility where, on the record
    before him, the single justice could properly conclude that the plaintiff's
    chances of success in the underlying litigation were relatively strong
    and that the potential hardships to the plaintiff and the public in shutting
    the facility down would exceed the harm to the town if the facility were
    allowed to continue in operation for the additional time necessary for a
    decision of the case in the Superior Court. [648-649]

CIVIL ACTION commenced in the Superior Court Department
on May 22, 1987.

A petition filed in the Appeals Court on June 2, 1987, was
heard by *Grant,* J.

*John W. Giorgio* for the defendant.

*Warren D. Hutchison* for the plaintiff.

ARMSTRONG, J. This is an appeal by the board of selectmen
of Stoughton (board) from an order entered June 10, 1987, by
a single justice of this court, the effect of which was to continue
in effect, pendente lite, a temporary restraining order which
had been entered originally in the Superior Court. A judge of
that court had previously refused to continue the restraining
order. Had that refusal prevailed, the plaintiff, Jet-Line, would
have been without the local permits (under G. L. c. 148, § 13)
thought necessary to store oil at its hazardous waste treatment
facility in Stoughton, with the result that the facility would

have had to cease operation while the underlying litigation concerning the validity of certain permit revocations remained undecided.

There is no question that a single justice of this court has the authority to enter such an order, *Edwin R. Sage Co.* v. *Foley*, 12 Mass. App. Ct. 20, 22-23 (1981), however sparingly that authority may be exercised. *Id.*, at 23-25. The authority does not depend on a determination that the trial court judge, in denying relief, made incorrect rulings of law or abused his discretion. In most cases, based on the deference normally accorded determinations by the judge who heard the matter in the first instance, the single justice will decline to act on an application for relief under G. L. c. 231, § 118, first par., that does not disclose clear error of law or abuse of discretion. The authority of the single justice in acting on such an application is nonetheless plenary, with the result that his order will be reviewed on appeal in the same manner as if it were an identical order by the trial judge considering the matter in the first instance. The fact that the trial judge denied Jet-Line's application for preliminary injunctive relief is, thus, irrelevant to our review of the order of the single justice granting such relief.[1]

The standards for the issuance of a preliminary injunction are set out in *Packaging Indus. Group, Inc.* v. *Cheney*, 380 Mass. 609, 616-618 (1980). These are now familiar and need not be repeated here. It is also familiar law that an appellate court, reviewing such an order under G. L. c. 231, § 118, second par., does not "substitute [its] judgment for that of the [issuing] court where the records disclose reasoned support for its action." *Edwin R. Sage Co.* v. *Foley*, 12 Mass. App. Ct. at 25-26. Compare *Carabetta Enterprises, Inc.* v. *Schena, ante* 389, 392 (1988). Compare, on the criminal side, *Commesso* v. *Commonwealth*, 369 Mass. 368, 374 (1975).

---

[1] Contrast *Biotti* v. *Selectmen of Manchester, ante* 637 (1988), in which the preliminary injunction ordered by the single justice was to dissolve by its own terms when a panel decided the appeal under G. L. c. 231, § 118, second par., from the order of a trial judge denying preliminary injunctive relief. There it was held that the decision on that appeal rendered moot an appeal from the order of the single justice.

Here, the board voted to revoke Jet-Line's oil storage permits. In the underlying action, still pending in the Superior Court, Jet-Line sought judicial review of the revocation order in accordance with the standards of *Foster from Gloucester, Inc.* v. *City Council of Gloucester*, 10 Mass. App. Ct. 284 (1980). Jet-Line raised numerous issues in that action, both procedural and substantive. In particular, it contested each of the six violations found by the board of the permit conditions imposed by the board (and agreed to by Jet-Line) in 1980. It is clear on the record before the single justice and before us that the single justice, as to certain of the violations (at least), could properly conclude that Jet-Line's chances of success in its action were relatively strong.[2] If some but not all of the violations found by the board should be sustained, and others should be disapproved, the usual result would be invalidation of the board's decision with a remand for further consideration by the board, except where it is substantially certain that the board would revoke the permits on the basis of its findings of violations that are sustained. The reason is that, despite language authorizing the board to revoke the permits on any finding of less than full compliance, it is manifest that the board

---

[2] An example is the third violation, Jet-Line's alleged failure "to comply with the regulations, procedures and standards adopted by the Department of Environmental Quality Engineering as more fully set forth in DEQE's Order and Notice of Noncompliance dated December 11, 1986 . . . ." The condition that this failure is said to violate is condition no. 1, requiring that Jet-Line "must have, at all times, a current valid license to transport and store the aforementioned hazardous waste materials . . . in accordance with the . . . Hazardous Waste Management Act of 1979 [i.e., G. L. c. 21C] and the subsequent regulations, procedures and standards adopted by [DEQE]. If the license is denied or revoked by State . . . Authorities, the operation of this facility by this license shall cease immediately." There was no finding, no showing, and no contention, that DEQE had revoked the temporary license under which Jet-Line operates.

Another example is the sixth violation, Jet-Line's failure to install vapor recovery systems for the storage tanks authorized by the permits. The condition alleged to be violated, condition no. 7, states that "[DEQE] will review and determine . . . appropriate vapor recovery systems for tanks. These systems shall be maintained by Jet-Line . . . while the tanks are in operation." In light of the board's admission that DEQE has not yet required that a vapor recovery system be installed, condition no. 7 cannot be said to have been violated.

is not obligated to do so but rather retains discretion in the matter. A court can not assume that the discretion will be exercised to revoke the permits regardless of the nature or seriousness of the proved violations, still less that the hearing process is but a pretext, with a predetermined outcome.

Other issues are briefed and argued by the parties. Of particular importance is the issue of the relationship between the State level regulatory scheme for hazardous waste storage and treatment established by G. L. cc. 21C and 21D, and the local level regulatory scheme established by G. L. c. 148, § 13, for storage of petroleum products and certain other explosives and combustibles. See, e.g., *Pereira* v. *New England LNG Co.*, 364 Mass. 109, 118-123 (1973) (company which has obtained approval of Department of Public Utilities under G. L. c. 164, § 105A, for storage and transportation of gas is not further required to obtain a municipal license for the same operation under G. L. c. 148, § 13); *Warren* v. *Hazardous Waste Facility Site Safety Council*, 392 Mass. 107, 120-122 (1984) (scheme for hazardous waste facility siting established by G. L. c. 21D and G. L. c. 40A, § 9, overrides certain local ordinances that would prohibit such siting). See also *New England Power Co.* v. *Selectmen of Amesbury*, 389 Mass. 69, 76-78 (1983).

It is not appropriate for this court, at this time, reviewing only the propriety of an order granting a preliminary injunction, to attempt to resolve these difficult and far reaching issues. The single justice did not purport to make rulings with respect to them. He was not required to, and did not, decide the case or any of its pivotal issues on the merits. So far as appears, he went no further in his evaluation of the legal issues than to satisfy himself that Jet-Line had some reasonable likelihood of success on the merits, even if only to the point of winning reconsideration of the revocation decision by the board. That determination was not in error.

Nor did the record require a determination that the town would suffer irreparable harm if the Jet-Line facility were permitted to operate during the pendency of its appeal from the revocation decision. The facility has been in operation

since 1973. The violations, even if proved, are seemingly not such as to pose an imminent threat to the health or safety of the townspeople.[3] On balance, the single justice could properly determine that the hardships involved in shutting down the facility (which, of course, if properly operated, serves a purpose of substantial societal value), both to Jet-Line and to the public, exceed those to the town in suffering the facility to operate the additional time necessary for the underlying case to be decided in the Superior Court.

In this respect, the town has not served its own purposes well in electing (as we were told at argument) to pursue the present appeal to a conclusion while allowing the underlying proceedings in the Superior Court to gather dust. It is there that the matter will be brought to a decision on the merits, not in an appeal from a preliminary injunctive order which did not have to and did not in fact involve any determination (as opposed to a rough assessment) of the merits of the case. "The filing of such an appeal [i.e., from an order granting or denying a preliminary injunction] does not divest the lower court of jurisdiction to proceed with the action on the merits." *Demoulas Super Mkts., Inc.* v. *Peter's Mkt. Basket, Inc.*, 5 Mass. App. Ct. 750, 753 (1977). Moreover, because of the wide discretion accorded the judge who acts on an application for interlocutory injunctive relief, "an appeal under the second paragraph of G. L. c. 231, § 118, from the grant or denial of a preliminary injunction rarely proves successful." *Carabetta Enterprises, Inc.* v. *Schena, ante* at 392. Especially is this true when the effect of the order is only to preserve the status quo while the

---

[3] The alleged violations other than those mentioned in note 1, *supra,* are: (1) maintaining a storage capacity of 241,000 or more gallons while the permits authorize only 230,000; (2) storage of gasoline, which is apparently not authorized by the permits, for five months during 1985; (3) storage of waste oil in tank trailers for periods in excess of the ten days said to be authorized by DEQE, and other violations of DEQE regulations; (4) failure to construct diking around tanks sufficient to contain 100 percent of the total capacity of all tanks (a requirement of the local permits that apparently far exceeds DEQE requirements); (5) a drum-crushing operation that terminated in 1986; and (6) discharge of effluents into the Massachusetts Water Resources Authority (MWRA) sewer system with concentrations of oil or chemicals found on at least two occasions to exceed MWRA standards.

case is under consideration. The town's efforts are thus more wisely directed to attempting to bring the case to a speedy hearing on the merits in the Superior Court, where, because of the substantial public interest involved on both sides, we can assume that every possible consideration will be given to granting such a hearing at the earliest reasonable date.

*Order of the single justice affirmed.*