ARTHUR S. DEMOULAS & others[1] vs. DEMOULAS SUPER MARKETS, INC. & others.[2] No. 90-P-1284. October 16, 1992. *Practice, Civil,* Interlocutory appeal, Injunction. *Injunction.*

When the plaintiff Arthur S. Demoulas obtained a preliminary injunction prohibiting the defendant Demoulas Super Markets, Inc. (DSM), from terminating his employment except for cause, DSM sought relief from a single justice of this court under G. L. c. 231, § 118, first par. The single justice modified the injunctive order to provide that DSM give Arthur a leave of absence pending the litigation with "interim" compensation during the leave at the annual rate of $60,000. Arthur appeals under G. L. c. 231, § 118, second par., arguing that the single justice acted without authority and substituted his discretion for that of the Superior Court judge. We conclude that there was a supportable basis for the single justice's order, which we affirm.

1. *The preliminary injunction.* It appears from the materials before us that the parties are involved in numerous lawsuits, one of which concerns an allegation by the plaintiffs that their stock in DMS was fraudulently converted by the president and chief executive officer of DSM to himself and his family members. This is of some relevance to the present complaint by which the plaintiff shareholders seek to inspect the defendants' books and records under "G. L. c. 156B, § 32, and the common law." The plaintiffs claim to be shareholders as direct owners, or beneficiaries of a constructive trust, or both.

Arthur is a shareholder in and an employee of DSM. He is the assistant produce manager with a claimed annual salary of $500,000. Because he feared that this lawsuit would prompt a retaliatory termination of his employment by DSM, he sought to enjoin DSM from firing him. The Superior Court judge reasoned that Arthur had alleged sufficient facts to show a right to inspect the defendants' books. See *Perry* v. *Perry*, 339 Mass. 470, 480 (1959), holding that a "beneficiary of a trust of shares in a family corporation may in appropriate proceedings force an examination of the corporate affairs, and also the equivalent of a stockholders' suit." Inferring that a significant part of Arthur's annual salary of $500,000 "reflects a beneficial ownership position in a closely held corporation," the Superior Court judge concluded that termination of his employment by DSM "could be tantamount to a freeze out." See *Wilkes* v. *Springside Nursing Home, Inc.*, 370 Mass. 842, 849 (1976), where the court noted that a freeze out is sometimes accomplished by depriving "minority stockholders of corporate offices and of employment with the corporation."

To meet DSM's concern that Arthur was "invulnerable to reasonable standards of employment" and its allegations that his behavior in the

---

[1] Evanthea Demoulas, Evan G. Demoulas, Diana D. Merriam, and Fotene Demoulas.

[2] Valley Properties, Inc., Lee Drug, Inc., Doric Development Corp., and Market Basket, Inc.

workplace was disruptive to business, the Superior Court judge indicated that upon a showing by DSM that there was cause for terminating Arthur's employment, he would modify his injunctive order.

2. *The petition for relief.* In acting on a petition for relief brought under G. L. c. 231, § 118, the authority of the single justice is "plenary, with the result that his order will be reviewed on appeal in the same manner as if it were an identical order by the trial judge considering the matter in the first instance." *Jet Line Servs. Inc.* v. *Selectmen of Stoughton,* 25 Mass. App. Ct. 645, 646 (1988). The question before us is "whether the single justice abused his discretion by entering an order without having a supportable basis for doing so." *Highland Tap of Boston, Inc.* v. *Boston,* 26 Mass. App. Ct. 239, 240 (1988), citing *Jet Line, supra,* and *Carabetta Enterprises Inc.* v. *Schena,* 25 Mass. App. Ct. 389, 392 (1988).

The expressed basis for the single justice's order was to provide an "interim solution" without fanning the flames of this intra-family dispute and to preserve judicial resources. A paid leave of absence for Arthur would eliminate possible, if not probable, disputes and interlocutory proceedings concerning his work performance. Such ancillary proceedings would only prolong the litigation and intensify the animosity among the litigants.

The leave of absence provided a solution whereby Arthur's employment position would be protected while the parties proceeded with the true matter at hand, inspection of the defendants' books and records. To protect Arthur's right as a shareholder to inspect the defendants' books and records, the single justice set out detailed provisions for the defendants' production of specific items and dates by which the presentment was to be made.[3]

There is also a very adequate basis in the record for the single justice's order concerning Arthur's annual salary of $60,000 during the period of his leave of absence. Although Arthur alleges that his annual salary from DSM is $500,000, there is an affidavit from the comptroller of DSM setting out the circumstances of Arthur's salary. The comptroller explained that every DSM managerial employee is paid an annual salary and, customarily, a discretionary year-end bonus. As of August, 1990, Arthur's annual salary was $60,000. His compensation from DSM in 1989 consisted of his annual salary of $48,000, and a year-end bonus of $100,000. In 1988, DSM had changed its fiscal year. As a result of this change, two bonuses were given. Arthur received his annual salary of $48,000, and the two bonuses for a total compensation of $548,000.[4]

There was also information before the single justice to show that the "bulk" of Arthur's annual salary, the bonus, is a distribution "which

---

[3]In his notice of appeal from the order of the single justice, Arthur designated those portions of the order pertaining to his leave of absence and his compensation during that period. See *Yanolis* v. *Yanolis,* 402 Mass. 470, 472-474 (1988).

[4]These figures do not include payment of Arthur's expenses associated with his use of a "corporate car."

[DSM], as a Subchapter S corporation, must continue to pay, and will continue to pay Mr. Demoulas even if his employment is terminated."

In ordering DSM to pay Arthur an annual salary of $60,000, the single justice was aware of but declined to express an opinion on Arthur's contention that his compensation for the period of 1986 through 1989 should be ascertained from an examination of W-2 forms submitted by DSM or by a comparison of the average compensation paid other shareholders with 300 shares of stock. In view of the comptroller's affidavit and the explanation of DSM's distributions of income for tax purposes, we think that the single justice acted reasonably in declining to use the procedure suggested by Arthur in setting his annual salary for the duration of his leave of absence.

3. *Conclusion.* There is a factual basis for the single justice's order, which preserves the status quo for the parties while they more wisely expend their energy attempting to bring the case to a resolution in the Superior Court. We see no abuse of discretion.

*Order of the single justice affirmed.*

*Judith Ashton (Thomas S. Fitzpatrick* with her) for the plaintiffs.
*Jerome Gotkin (Shepard Davidson* with him) for the defendants.