E.H. PERKINS CONSTRUCTION, INC. vs. TOWN OF LINCOLN.

No. 09-P-1227.

Suffolk. February 9, 2010. - November 4, 2010.

Present: TRAINOR, WOLOHOJIAN, & MILKEY, JJ.

*Appeals Court,* Appeal from order of single justice. *Moot Question. Practice, Civil,* Moot case. *Public Works,* Bidding procedure. *Contract,* Public works, Bidding for contract.

This court dismissed, as moot, an appeal from an order of a single justice granting a petition to dissolve a preliminary injunction that had stayed the awarding by a town of a contract for a road paving project, where the town had awarded the contract and the project had moved forward. [209-210] TRAINOR, J., concurring in the result.

CIVIL ACTION commenced in the Superior Court Department on April 13, 2009.

After proceedings before *Herman J. Smith, Jr.,* J., a petition seeking relief from an order granting a preliminary injunction was heard in the Appeals Court by *Cypher,* J.

*Andrew W. Daniels* for the plaintiff.

*Richard T. Holland* for the defendant.

MILKEY, J. In February of 2009, the town of Lincoln (town) solicited bids on a road paving project. The town eventually awarded the contract to Sunshine Paving Corp. (Sunshine), which had submitted the lowest bid. To award the contract to Sunshine, the town had to waive a prequalification requirement that had been included in the bid documents (regarding the scale of the projects on which bidders had previously worked).

E.H. Perkins Construction, Inc. (Perkins), a competitor of Sunshine, also bid on the contract. After the town stated its intent to award the contract to Sunshine, Perkins filed an action in Superior Court seeking to contest the town's intended course of action. Its complaint, which remains pending in Superior

Court, alleges that the town's waiver of the prequalification requirement violated the public bidding laws. The complaint requested injunctive relief and reimbursement of Perkins's bid preparation costs.

After a Superior Court judge granted Perkins's request for a preliminary injunction staying the process, the town filed a petition for interlocutory review pursuant to G. L. c. 231, § 118, first par., seeking to dissolve the preliminary injunction (so as to allow the awarding of the contract and the paving project itself to move forward). A single justice of this court granted that petition on June 11, 2009, and Perkins now appeals that order pursuant to G. L. c. 231, § 118, second par.[1] See *T & D Video, Inc.* v. *Revere*, 423 Mass. 577, 580 (1996).

The current appeal presents the narrow question whether the single justice abused her discretion in addressing the preliminary relief issues.[2] See *Aspinall* v. *Philip Morris Cos.*, 442 Mass. 381, 389-390 (2004). The town awarded the paving contract to Sunshine, and the project has long since moved forward.[3] Perkins implicitly acknowledged in its brief that it has no interest in whether the preliminary injunction is reinstated, and it expressly acknowledged at oral argument that the question of injunctive relief is at this point purely "academic." Perkins seeks to transform the current limited appeal into a vehicle for resolving the underlying merits, which remain pending in Superior Court. That case is still alive, because Perkins is seeking to recover its bid preparation costs.

The initial question we face is whether the appeal before us is moot. "Ordinarily, litigation is considered moot when the party who claimed to be aggrieved ceases to have a personal stake in its outcome." *Blake* v. *Massachusetts Parole Bd.*, 369 Mass. 701,

---

[1]Perkins moved to stay the single justice's order, and the single justice denied that motion. Perkins has not challenged that ruling.

[2]Answering that question would require us to examine not only the single justice's assessment of Perkins's likelihood of success on the merits, but other factors as well, including whether the preliminary relief "promotes the public interest, or, alternatively, that the equitable relief will not adversely affect the public." *Loyal Order of Moose, Inc., Yarmouth Lodge #2270* v. *Board of Health of Yarmouth*, 439 Mass. 597, 601 (2003), quoting from *Commonwealth* v. *Mass. CRINC*, 392 Mass. 79, 89 (1984).

[3]According to the town, most of the project had actually been completed by the time the town filed its brief on September 29, 2009.

703 (1976). Although Perkins has a personal stake in the underlying merits, the current appeal is limited to whether the preliminary injunction should be reinstated. Where Perkins has conceded that it has only an "academic" interest in that question, the current appeal is moot and should be dismissed.[4]

This is not to say that the underlying merits do not warrant judicial review. Indeed, we agree with our concurring colleague that the substantive issues that Perkins seeks to raise are important ones that merit judicial examination. That review, however, should occur first in the trial court, with any appellate review to follow entry of final judgment.[5]

*Appeal dismissed.*

TRAINOR, J. (concurring in the result). I agree with the majority that this appeal presents us with the question whether the single justice abused her discretion in dissolving the preliminary injunction. I believe that the order of the single justice should be affirmed. Ultimately, I also believe that the appeal is moot, and therefore, I concur in the result.

This case raises issues of significant concern to the public interest, and there is no guarantee that E.H. Perkins Construction, Inc. (Perkins), will pursue expensive litigation in the trial court for the sake of recovering its bid preparation costs and then pursue another appeal that has already been fully briefed. While Perkins is entitled to pursue recovery of its bid preparation costs in the trial court, it is possible, if not probable, that

---

[4]As the concurring opinion highlights, *Petricca Constr. Co.* v. *Commonwealth*, 37 Mass. App. Ct. 392, 395 (1994), recognizes our ability to reach the underlying merits even in this context. Regardless of whether we have that power, however, we think it would be improvident to use it here, where the underlying case remains pending in the Superior Court and provides a better mechanism, including full fact finding if necessary, for an initial resolution of the merits.

[5]We see no reason why any remaining proceedings in the trial court could not be completed expeditiously, given that the case seems tailor-made for summary judgment. If there are material facts in dispute, that is even more reason why review should occur in the ordinary course. Nothing in our opinion should be read as tying the hands of the lower court judge in addressing the merits, and we respectfully disagree with the statement in the concurring opinion that without our addressing the underlying merits now, "it is unlikely that the trial court will award bid preparation costs."

the significant issues involving the public interest, which are the basis for awarding bid preparation costs, will not be decided at an appellate level. The majority acknowledges that we have the ability to reach the merits in this matter. See *Petricca Constr. Co.* v. *Commonwealth*, 37 Mass. App. Ct. 392, 395 (1994). It would prefer, however, that the initial resolution of the merits, including the opportunity for full fact finding, be determined in the trial court. While it is certainly within our discretion to take this approach, I am constrained to observe that the record in this matter is complete and the issues probably will be decided pursuant to summary judgment in the trial court. Apparently, no additional fact finding is necessary because the parties have fully briefed the issues, nor is there any indication that the parties have requested additional fact finding in the trial court. Additionally, the substantive appellate issues have been fully briefed by both parties because, at least in part, they understand that the resolution of these issues is the basis for determining whether Perkins should be awarded its bid preparation costs. Finally, without a determination by this court that the dissolution of the preliminary injunction was error, it is unlikely that the trial court will award bid preparation costs.[1]

In reviewing the ruling of a single justice acting under G. L. c. 231, § 118, first par., "[t]he essential legal question . . . [is] 'whether the single justice abused [her] discretion by entering an order without having a supportable basis for doing so.' " *Aspinall* v. *Philip Morris Cos.*, 442 Mass. 381, 390 (2004), quoting from *Demoulas* v. *Demoulas Super Mkts., Inc.*, 33 Mass. App. Ct. 939, 940 (1992). When considering a request to dissolve a preliminary injunction, the single justice must conduct "a combined evaluation of the moving party's likelihood of success on the merits, its claim of injury, and finally, a balancing of the competing harms to each party." *T & D Video, Inc.* v. *Revere*, 423 Mass. 577, 580 (1996). The single justice "initially must consider whether the plaintiff has demonstrated that without the relief [it] would suffer irreparable harm, not capable of remediation by a final judgment in law or equity." *Commonwealth*

---

[1]Most of the case law in this area has been written in consideration of a single justice's action regarding a preliminary injunction, including affirming an order dissolving a preliminary injunction. See *Petricca Constr. Co., supra.*

v. *Mass. CRINC*, 392 Mass. 79, 87 (1984). Having found the possibility of irreparable harm, "[a]n injunction may issue properly only if the [single justice] concludes that the risk of irreparable harm to a plaintiff, in light of [the] chances of success on [its] claim, outweigh[s] the defendant's probable harm and likelihood of prevailing on the merits of the case." *Id.* at 87-88. See *John T. Callahan & Sons, Inc.* v. *Malden*, 430 Mass. 124, 130-131 (1999). Additionally, "[w]hen a party seeks to enjoin governmental action, a [single justice] is also 'required to determine that the requested order promotes the public interest, or, alternatively, that the equitable relief will not adversely affect the public.' " *Loyal Order of Moose, Inc., Yarmouth Lodge #2270* v. *Board of Health of Yarmouth*, 439 Mass. 597, 601 (2003), quoting from *Commonwealth* v. *Mass. CRINC*, *supra* at 89. "Our review, then, must focus on whether the [single justice] applied the [foregoing] legal standard and whether the record reasonably supports [her] factual determinations." *T & D Video*, *supra*.

In her order, the single justice advanced directly to the likelihood of success prong because she considered the case law to be adverse to Perkins's position on the merits. Citing to *Gil-Bern Constr. Corp.* v. *Brockton*, 353 Mass. 503 (1968), and *J. J. & V. Constr. Corp.* v. *Commissioner of Pub. Works of Fall River*, 5 Mass. App. Ct. 391 (1977), she concluded that Perkins could not demonstrate a likelihood of success. Those cases stand for the proposition that, under G. L. c. 149, §§ 44A-44L, see *Gil-Bern*, *supra* at 505-507, and G. L. c. 30, § 39M, see *J. J. & V.*, *supra* at 391-392, literal noncompliance with the terms of a bid invitation, relating to a nonstatutory prerequirement, may be cured before contract execution.

I cannot agree with the single justice that the *Gil-Bern* and *J. J. & V.* cases preclude Perkins from demonstrating a likelihood of success on the merits. Those cases presented defects in the bidder's submissions readily distinguishable from the defects posed here. In *Gil-Bern*, *supra*, and *J. J. & V.*, *supra*, the noncompliance with nonstatutory prerequirements was in essence ministerial, not substantive, see *Gil-Bern*, *supra* at 505-506 ("[i]n matters of *substance* there must be strict compliance with the [bid] requirements," whereas, "[o]n the other hand, minor

or formal deviations from requirements do not compel rejection of the bid" [emphasis added]); *J. J. & V., supra* at 392 ("judge's conclusion that the failure to file [equal employment opportunity] certification along with the bids was an informality"), and was curable before contract execution. See *ibid.* ("city . . . permitted the lowest bidder to file its certificate [of equal employment opportunity] prior to the awarding of the contract," but after submission of bid documents). Those facts were material to the disposition of those cases. Cf. *Peabody Constr. Co.* v. *Boston*, 28 Mass. App. Ct. 100, 105 (1989) ("[t]here does not appear to be any language in the cases which *compels* a city to treat an omission as an informality," thereby divesting "the city of its discretion in the matter"). In addition, the omissions in those cases were curable prior to execution of the contracts.

Here, according to Perkins's allegations, the defect in Sunshine Paving Corp.'s (Sunshine's) bid concerned a mandatory prequalification requirement that was essential to Sunshine's ability to submit a bid under the provisions of the town of Lincoln's (town's) request for bids. The defect could not be cured during the bid process. It would not be unreasonable to assume that other firms chose not to respond to the town's request for bids because of their inability to comply with this mandatory prequalification requirement. A primary objective of G. L. c. 30, § 39M, is to set up an open and fair bidding process. See *Petricca Constr. Co.* v. *Commonwealth*, 37 Mass. App. Ct. at 396 (purpose of § 39M is "to create an open and honest competition with all bidders on an equal footing"). The allowance of the arbitrary exercise of municipal discretion runs afoul of the basic premise of § 39M. See *Modern Continental Constr. Co.* v. *Massachusetts Port Authy.*, 369 Mass. 825, 829 (1976) (municipal action under § 39M subject to review when there is "evidence of bad faith or arbitrary, capricious, or illegal action").[2] Moreover, despite the town's arguments, the foregoing cases

---

[2]It is true that affording flexibility to cities and towns was an important objective in enacting § 39M. See *LeClair* v. *Norwell*, 430 Mass. 328, 335 (1999). I do not question a municipality's authority to set prequalification requirements *prior* to issuing a request for bids. It is far from clear, however, that a municipality may change the basic and mandatory bid requirements *after* issuing such requests.

do not stand for the proposition that all nonstatutory prerequirements may be waived in any manner a municipality wishes. Finally, not addressing this issue invites future repetition of the same practice, and while no foul play was alleged here, it is easy to foresee how such a practice would invite foul play. In addition, in the future, businesses would be incapable of knowing which mandatory bid requirements may be waived to their detriment, either for having bid or for not having bid.

I also would not affirm the order of the single justice based upon the absence of irreparable harm. While, typically, "[e]conomic harm alone . . . will not suffice as irreparable harm unless 'the loss threatens the very existence of the movant's business,' " *Tri-Nel Mgmt., Inc.* v. *Board of Health of Barnstable*, 433 Mass. 217, 227-228 (2001), quoting from *Hull Mun. Lighting Plant* v. *Massachusetts Mun. Wholesale Elec. Co.*, 399 Mass. 640, 643 (1987), the Supreme Judicial Court has specifically recognized that, in the public bidding context, "if the contract were awarded to [the party benefiting from the violation of the bidding laws] without rebidding, [the injured bidder's] opportunity for consideration . . . would be forever lost, and its remedy at law for the damages incurred in preparing its bid falls far short of being the equivalent of the potential to win the contract." *Modern Continental Constr. Co.* v. *Lowell*, 391 Mass. 829, 837 (1984). See *Petricca Constr. Co., supra* at 399. Accordingly, Perkins has demonstrated that it likely suffered irreparable harm through the dissolution of the preliminary injunction.

Nevertheless, I agree with the majority in the result because, at this point, after nine months of Sunshine's performance under its contract with the town, "public construction has been started" and "the requested injunctive relief is now [practically] academic." *Id.* at 395. I am loath to unwind that contract now, because such an action, though technically within our discretion, would not "serve the public interest." *Tri-Nel Mgmt., Inc.* v. *Board of Health of Barnstable, supra* at 219. Accordingly, though I disagree with the single justice's legal conclusions, I concur with the majority because to do so is in the public's interest.