NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

17-P-809                                          Appeals Court
17-P-1096


CINDY KING  vs.  JOSEPH Z. SHANK & others[1]
(and a companion case[2]).


Nos. 17-P-809 & 17-P-1096.

Suffolk.     November 1, 2017. - March 2, 2018.

Present:  Milkey, Blake, & Singh, JJ.


Municipal Corporations, Removal of public officer, Selectmen.
     Elections, Recall.  Practice, Civil, Preliminary
     injunction.  Appeals Court, Appeal from order of single
     justice.  Injunction.



     Civil action commenced in the Superior Court Department on
March 24, 2017.

---

[1] Elaine R. Shank, Leanne Jackson, Erica L. Art, Kelly
Michele Kelly, Michael P. Kelly, Lisa Lewand, Stacy C. Sheldon,
Stephen J. Sheldon, and Jennifer Ann McLaughlin.  All ten
defendants are residents of Townsend.  King also named the town
clerk of Townsend and members of the board of registrars as
party defendants; however, they have not appealed or otherwise
participated in the appeal.

[2] Gordon N. Clark vs. Joseph Z. Shank, Elaine R. Shank,
Leanne Jackson, Erica L. Art, Kelly Michele Kelly, Michael P.
Kelly, Lisa Lewand, Stacy C. Sheldon, Stephen J. Sheldon, and
Jennifer Ann McLaughlin.  Like King, Clark also named the town
clerk of Townsend and members of the board of registrars as
party defendants; however, they have not appealed or otherwise
participated in the appeal.

A motion for a preliminary injunction was heard by John T. Lu, J.

A proceeding for interlocutory review was heard in the Appeals Court by Green, J.

Civil action commenced in the Superior Court Department on June 9, 2017.

A motion for a preliminary injunction was heard by Gary V. Inge, J.


Ira H. Zaleznik (Benjamin W. O'Grady also present) for the defendants.
John M. Dombrowski for Cindy King.


SINGH, J.  In February, 2017, the defendants, ten residents of the town of Townsend (town), petitioned to remove Cindy King and Gordon Clark from their positions as members of the town board of selectmen (board) by way of recall petitions.  The town board of registrars found the petitions to be in order, and the board scheduled a recall election for June, 2017.  King filed a complaint in Superior Court seeking a declaratory judgment that the recall petition was invalid and a preliminary injunction enjoining the recall election.  After a judge of the Superior Court denied the motion for a preliminary injunction, King filed a petition for interlocutory relief pursuant to G. L. c. 231, § 118, first par.  A single justice of this court issued the preliminary injunction enjoining the recall election as to King.  Clark then filed a parallel action in the Superior Court, citing

the single justice's order in the King litigation.  A different Superior Court judge allowed Clark's motion and issued a preliminary injunction enjoining the recall election as to Clark.

The defendants appeal the preliminary injunctions issued by the single justice in King's case and the Superior Court judge in Clark's case.  Both appeals are brought pursuant to G. L. c. 231, § 118, second par.  The town's recall election remains stayed pending this appeal.  We reverse.

1.  Standard of review.  "We review the grant or denial of a preliminary injunction for abuse of discretion."  Eaton v. Federal Natl. Mort. Assn., 462 Mass. 569, 574 (2012).  See E.H. Perkins Constr., Inc. v. Lincoln, 78 Mass. App. Ct. 208, 209 (2010).  In making this assessment, we look to "the same factors properly considered by the judge in the first instance."[3] Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 615-616 (1980).

A party moving for a preliminary injunction must show "(1) a likelihood of success on the merits; (2) that irreparable harm

---

[3] The single justice's order is reviewed on appeal in the same manner as if it were an identical order by the trial judge considering the matter in the first instance.  See Aspinall v. Philip Morris Cos., 442 Mass. 381, 389 (2004), citing Jet-Line Servs. Inc. v. Board of Selectmen of Stoughton, 25 Mass App. Ct. 645, 646 (1988) (trial judge's denial of injunction irrelevant to review of single justice's allowance of injunction).

will result from denial of the injunction; and (3) that, in light of the [moving party's] likelihood of success on the merits, the risk of irreparable harm to the [moving party] outweighs the potential harm to the [nonmoving party] in granting the injunction." Tri-Nel Mgt., Inc. v. Board of Health of Barnstable, 433 Mass. 217, 219 (2001). Where, as here, the motion seeks to enjoin governmental action, the judge must find that "the requested order promotes the public interest, or, alternatively, that the equitable relief will not adversely affect the public." Commonwealth v. Mass. CRINC, 392 Mass. 79, 89 (1984). See Tri-Nel Mgt., Inc. v. Board of Health of Barnstable, supra. If a preliminary injunction was issued solely on the basis of documentary evidence, "we may draw our own conclusions from the record." Packaging Indus. Group, Inc. v. Cheney, supra at 616.

As to each order here, we review whether the judge applied the proper legal standards and whether there was reasonable support in the record for his evaluation of factual questions; "conclusions of law are subject to broad review and will be reversed if incorrect." Fordyce v. Hanover, 457 Mass. 248, 256 (2010), quoting from Packaging Indus. Group, Inc. v. Cheney, supra.

2. Background. King and Clark were both elected to the board in 2015 and continue to serve. At the time Clark filed

his complaint, he was serving in the capacity of chairman of the board. In February, 2017, the defendants initiated petitions to recall King and Clark "on the grounds of misfeasance and neglect of duty" in their roles as members of the board. In the required affidavits accompanying the petitions, the defendants alleged that both King and Clark

> "neglected [their] dut[ies] to adequately represent the people of Townsend by refusing to argue in the affirmative for the public to be allowed a time for public communication at Board of Selectmen meetings when no other board before this has refused to hear public comments or concerns and

> ". . . impeded our Police Chief's ability to do the job he was hired to do by using [their] position[s] of authority and by imposing [their] views on day-to-day management of the Police Department and

> ". . . neglected to support prior agreements made by the town with our Police Lieutenant and

> ". . . neglected to speak for obtaining an official and full background check on an applicant for a senior position with the Town of Townsend prior to signing the employment contract."

The affidavit supporting the petition to recall Clark additionally alleged that he

> "participated in searches and discussions to hire a new Police Chief, his wife's supervisor, which caused a perception on the part of members of the community that he was not unbiased and

> ". . . acted outside of his Board's authority and as a lone member, by initiating discussions for a separation agreement with Townsend's former Police Chief."

After obtaining the necessary signatures from registered voters, the defendants filed the recall petitions with the town clerk.  After the town's board of registrars certified that the petitions were in order and that a recall election could therefore be scheduled, King and Clark both moved to enjoin the election, claiming that the grounds alleged in the recall petitions were invalid.  Neither claimed any other deficiency in the recall process.

3.  Recall act.  Recall of the town's government officials is governed by c. 27 of the Acts of 1995, "An Act Providing for Recall Elections in the Town of Townsend" (act), which provides that an elected official who has been in office for at least four months, and who still has at least six months remaining in his or her term, may be subject to recall.  St. 1995, c. 27, § 1.  Section 2 of the act sets forth the process for recall, which includes a petitioner filing an affidavit with the town clerk, setting forth the name of the official to be recalled along with a statement of the grounds for recall.  The petition must be supported by the signatures of at least ten percent of registered voters (including 125 from each precinct) and returned to the town clerk within twenty-one days.

Within twenty-five hours of receipt of the petition, the town clerk must submit the petition to the "registrars of voters" who have seven days within which to certify the

sufficiency of the signatures.  Ibid.  Once the registrars certify that a sufficient number of registered voters have signed the petition, the town clerk must notify the board.  Id. at §§ 2, 3.  Within forty-eight hours, the board must notify the official whose recall is sought, giving him or her five days within which to resign.  Id. at § 3.  If no resignation is forthcoming, the board must schedule a recall election within sixty to ninety days.  Ibid.

In the recall election, the ballot asks the voters whether they are "for the recall" of the named official or "against the recall" of the official.  Id. at § 6.  The ballot also sets forth candidates to succeed the official.  Ibid.  The official whose recall is sought may stand as a candidate to succeed him or herself.  Ibid.  If the majority vote is in favor of recall, the official will be deemed recalled, provided that twenty-five percent of registered voters participate in the election.  Ibid.

With respect to the grounds for recall, the act provides that the affidavit in support of the recall petition must include "a statement of the grounds upon which the petition is based."  Id. at § 2.  Immediately thereafter, the following language appears:

> "Lack of fitness, insobriety while performing official functions, involuntary commitment to a mental health facility, being placed under guardianship or conservatorship by a probate court;

> "Corruption, conviction of a felony involving moral
> turpitude, conviction of bribery, or extortion;
>
> "Neglect of duties, repeated absences from meetings
> without just cause, which shall include but not be
> limited to illness or regular vacation periods; and
>
> "Misfeasance, performance of official acts in an
> unlawful manner or a willful violation of the open
> meeting law.
>
> "In no case shall the exercise of discretion in
> voting on matters before the officer constitute
> grounds for recall."

Ibid.

3. Discussion. a. Likelihood of success on merits. The
single justice agreed with King that the affidavit that
accompanied the petition to recall her failed to cite legally
valid grounds for doing so. On this basis, the single justice
concluded that King had established a likelihood of success on
the merits. The Superior Court judge in Clark's case adopted
the single justice's reasoning and ruled in Clark's favor. For
the reasons set forth below, we respectfully disagree. In our
view, the inquiry into whether the affidavits set forth proper
grounds for recall exceeded the scope of permissible judicial
review of a local recall petition. Before turning to the
language of the particular recall act at issue here, we briefly
review general principles established by existing case law.

Although now more than one-half a century old, the leading
case on recall elections remains Donahue v. Selectmen of Saugus,

343 Mass. 93, 95 (1961). In Donahue, voters sought to recall several selectmen on the ground of their votes in favor of issuing a particular liquor license. The selectmen argued that, in light of the consequence that a recalled official may become ineligible for a time for appointment to any town office, the "grounds" for recall, though undefined, should be construed as "substantial grounds" involving "some wrong or serious impropriety." Ibid. The Supreme Judicial Court rejected this argument, reasoning that "[t]he function of the affidavit [containing a statement of the grounds for recall] is not to restrict the meaning of the unqualified word 'grounds' but is to start in motion the recall procedure" (footnote omitted). Id. at 95-96. "That the courts should conduct hearings and go beyond the statement [of grounds] is not contemplated by [the Saugus recall act]. This is clear from the direct wording of that section as well as from the stringent requirements of [that act] that there be a prompt recall election." Id. at 95.

Although the particular import of Donahue and subsequent cases must be viewed in light of the specific language of the recall acts at issue there, these cases also stand for larger principles. We view the case law as adopting a largely procedural approach to judicial review of recall petitions and elections. Under this reading, the role of courts in policing recall elections generally is limited to ensuring the integrity

of the process.  See Galvin v. Town Clerk of Winchester, 369 Mass. 175, 176 (1975) (recall petition held defective as it was not supported by "affidavit" as required in Winchester recall act).  The cases counsel against courts being drawn into evaluating the stated grounds for recall, something that would run the risk of the courts usurping the public debate on local issues to be decided at the ballot box.  See Donahue v. Selectmen of Saugus, 343 Mass. at 95-96 (recall act did not contemplate courts going behind statement of grounds, particularly given that implication of recall was simply that "the voters prefer not to have the recalled official continue to act").  As a recall election is "a device to make elected officers responsive to the opinions of the voters on particular issues," id. at 96, this purpose is undermined by judicial scrutiny into the substance of the voters' stated grounds for recall.

Our decision in Mieczkowski v. Board of Registrars of Hadley, 53 Mass. App. Ct. 62, 64-65 (2001), typifies this procedural approach.  The Hadley recall act provided that an elected official "may be recalled . . . for reason of lack of fitness, incompetence, neglect of duties, corruption, malfeasance, misfeasance, or violation of oath."  Id. at 62-63. The affidavit in support of recall simply restated these grounds without any specific factual allegation.  We rejected the

argument that the affidavit needed to be more specific:  "[W]e do not think the purpose of the affidavit is to give notice to the one who is the object of the recall of every specific factual basis therefor or to afford that person an opportunity to respond. . . ."  Id. at 64.  "To the extent that the Legislature required an affidavit of grounds, that requirement is more for the benefit of providing notice of the general reasons for the recall to the voters, not to the elected official."  Ibid.  As "[t]he requisite statement of grounds was adopted by the requisite number of voters who approved the recall by signing the petitions," we determined that the procedural aspects of the recall process had been met to enable the recall election to go forward.  Id. at 65.

Turning to the act here, it similarly requires a petitioner to submit an affidavit setting forth the grounds for recall in order to start in motion the recall process.  St. 1995, c. 27, § 2.  Four grounds (lack of fitness, corruption, neglect of duties, and misfeasance) are listed, followed by a statement that "the exercise of discretion in voting on matters before the officer" shall not constitute grounds for recall.  Ibid. Neither King nor Clark claims that the stated grounds for recall involve their conduct in voting.  Rather, they argue that this language precludes complaints arising out of their discretionary acts from serving as a basis for recall.  We reject this

interpretation because it reads out of the act the words "in voting on matters before the officer," and expands a single narrow exception into an all-encompassing one.  See Chin v. Merriot, 470 Mass. 527, 537 (2015) (basic tenet of statutory construction is that statute is not to be interpreted to render words within it superfluous).  See also District Attorney for the Plymouth Dist. v. Selectmen of Middleborough, 395 Mass. 629, 633 (1985) (where there is express exception, other exceptions shall not be implied).

Although the petitions here set forth two of the listed grounds as the basis for recall –- misfeasance and neglect of duties –- King and Clark nevertheless contend that they could not be recalled on these grounds unless their alleged conduct fell within the language of the explanations set forth following each of those terms in the act.  Specifically, they claim that they could not be recalled for "neglect of duties" unless the voters alleged "repeated absences from meetings without just cause," and that they could not be recalled for "misfeasance" unless the voters alleged "performance of official acts in an unlawful manner, or a willful violation of the open meeting law."  See St. 1995, c. 27, § 2.  In other words, King and Clark argue that the grounds for recall should be limited to the highly specific acts included in the explanations following each

ground, even though the act includes no express language of such limitation.

Although the explanatory language following each ground, when read on its own, provides some support for the interpretation proffered by King and Clark, we view such language, at best, as ambiguous.  Given that Donahue and its progeny caution against reading judicially enforceable substantive standards into the recall process unless that intent is clearly stated, we decline to adopt King's and Clark's interpretation.[4]  In our view, the explanatory language instead should be read as providing nonexhaustive examples of the type of conduct that may be encompassed in each ground, rather than

---

[4] The single justice reasoned that it was appropriate for courts to review the sufficiency of grounds for recall by analogizing to ballot initiative cases where courts are called upon to review the propriety of proposed legislation being placed on a ballot for public vote.  See, e.g., Abdow v. Attorney Gen., 468 Mass. 478 (2014) (reviewing whether initiative petition to prohibit certain forms of gambling involved proper subject to be placed on ballot for consideration by voters at Statewide election).  In our view, the analogy is inapt.  Unlike grounds for recall under the act, matters that are appropriate subjects for Statewide ballot initiatives are expressly limited by art. 48 of the amendments to the Massachusetts Constitution.  See art. 48 (list of matters excluded from ballot initiative petitions including religion, free speech, right to trial by jury).  The only express limitation in the act is that "the exercise of discretion in voting" may not be grounds for recall (a provision that is not implicated here).  Additionally, an improper ballot initiative has the potential to impair the rights of individuals.  See Carney v. Attorney Gen., 451 Mass. 803, 819-820 (2008).  A recall election, by contrast, impacts the elected official, who is beholden to the electorate in any event.

as definitions which limit each ground.[5]  Thus, we do not view
the explanatory language here as intended to restrict or limit
the grounds set forth in the act.

King and Clark nevertheless suggest that, even if the
explanatory language is merely illustrative, it provides
guidance as to the type of conduct or magnitude of transgression
that is required to provide a valid ground for recall.  They
argue that the conduct alleged to constitute neglect of duties
and misfeasance in the recall petitions are "not remotely close"
to the examples specified in the act.  We reject as unworkable
any interpretation that would require courts to do a comparative
analysis of various types of misconduct or to assess the
relative egregiousness of alleged misconduct.[6]

An interpretation that would allow an elected official to
challenge the sufficiency of the grounds for recall would mire
the process in litigation delay and undermine the purpose of the
act, which clearly contemplates a "'prompt recall election'

---

[5] By providing an illustrative role, the explanatory
language is not rendered superfluous.  See generally Wolfe v.
Gormally, 440 Mass. 699, 704 (2004) (statute to be construed to
give effect to all of its provisions).

[6] As illustration, King was alleged to have neglected her
duties by, among other things, failing to obtain background
checks for town employees.  Because the explanatory language
following the term "neglect of duties" mentions repeated
absences from meetings, a court would have to determine whether
the neglect of duties involved in repeated absences from
meetings is equivalent to the neglect of duties involved in
failing to obtain background checks for town employees.
Certainly, reasonable minds could differ as to this issue.

. . . and not a prolonged period while the official under siege mounts a defense." Mieczkowski v. Board of Registrars of Hadley, 53 Mass. App. Ct. at 64-65, quoting from Donahue v. Selectmen of Saugus, 343 Mass. at 95. See Wolfe v. Gormally, 440 Mass. 699, 704 (2004) ("seemingly conflicting language" in statute must be interpreted "to make it an effectual piece of legislation in harmony with common sense and sound reason" [quotation omitted]). See also Peterborough Oil Co., LLC v. Department of Envtl. Protection, 474 Mass. 443, 448 (2016) (if statutory language is sufficiently ambiguous to give rise to multiple rational interpretations, court gives effect to interpretation that furthers purpose of statute).

Aside from challenging the validity of the grounds for recall, King and Clark made no allegation of any procedural deficiency. In our view, they did not establish a likelihood of success on the merits of their claims that the recall petitions were invalid.

b. Balance of harms.[7] The typical balance of harms analysis involves a consideration of the harm occasioned by each party with and without an injunction. See Packaging Indus.

---

[7] Although the failure to establish a likelihood of success on merits is sufficient to deny a preliminary injunction, see Tri-Nel Mgmt., Inc. v. Board of Health of Barnstable, 433 Mass. at 227, we proceed to analyze the balance of harms in order to address the important issue of where the public interest lies in this context.

Group, Inc. v. Cheney, 380 Mass. at 617. In a case such as this, involving the interpretation of a statute that affects the public, the overriding consideration is where the public interest lies. See Commonwealth v. Mass. CRINC, 392 Mass. at 89. That determination in turn flows from the merits analysis. Were we to conclude that King and Clark had demonstrated that the recall election rested on invalid grounds, then it might follow that the public interest would not be served by holding a recall election which later may have to be nullified.

Having determined that King and Clark are not likely to prevail on the merits of their claims, however, we view the balance of harms quite differently. The harm to the public interest if a preliminary injunction issues enjoining the recall election is that the voters will be deprived of the ability to make their elected officials accountable by recall, as the course of litigation could likely extend to the expiration of the official's term in office. The public would, of course, have the ability to vote in the next regularly scheduled election. However, that remedy would undermine and possibly nullify the purpose of the act.

As the Supreme Judicial Court observed over a century ago:

> "'The object of elections is to ascertain the popular will and not to thwart it. The object of election laws is to secure the rights of duly qualified voters, and not to defeat them.' This must be borne in mind in the construction of such statutes, and the

> presumption is that they are enacted to prevent fraud and to secure freedom of choice, and not by technical obstructions, to make the right of voting insecure."

Blackmer v. Hildreth, 181 Mass. 29, 31 (1902), quoting from People v. Wood, 148 N.Y. 142, 147 (1895).

For their part, King and Clark argue that the absence of a preliminary injunction subjects them to the negative impact on their reputations in the community caused by the stigma of a recall election and the need to campaign for a special election with typically lower voter turnout, and a related greater likelihood of losing the election.  The identified harms potentially suffered by King and Clark are those that are attendant to any public official who is subject to recall.[8]  In mitigation of these burdens, the act incorporates a number of provisions to protect an elected official from undue harassment by a minority of voters.  First, the act provides the elected official with a four-month period of immunity from recall to allow the official to become established in the position.  St. 1995, c. 27, § 1.  Second, it requires ten percent of the voters, with 125 from each precinct, to approve the recall

---

[8] An elected official has no personal "right" to retain his or her position.  Rather, an elected official serves at the will of the people and stands in contrast to other officials who may be appointed or hired.  See Mieczkowski v. Board of Registrars of Hadley, 53 Mass. App. Ct. at 65 n.4 (distinguishing cause and reason to remove appointed official from recall procedure by voters).

petition in order to ensure that there is broad public support for a recall election. Id. at § 2. Third, it allows the officials subject to recall to stand as candidates to succeed themselves. Id. at § 4. And finally, any vote in favor of recall is not effective unless twenty-five percent of the electorate participates in the recall election.[9] Id. at § 6. Thus, any harm to the elected officials caused by the recall election is by no means inevitable. Even after a recall election, the officials may retain their positions if there is low voter turnout, or if they succeed themselves after recall, or if the vote is against recall. Particularly in light of our conclusion that King and Clark do not have a likelihood of success on the merits of their claims, we conclude that the balance of harms does not weigh in their favor. We also conclude that the public interest lies strongly in favor of allowing the recall election to proceed so that the will of the people may be ascertained.

Conclusion. In King, 17-P-809, the order of the single justice granting the preliminary injunction is reversed, and the injunction is dissolved. In Clark, 17-P-1096, the order of the

---

[9] To put these requirements into perspective, it is worth noting that less than twenty-five percent of town voters participated in the general election in which Clark came to office.

Superior Court judge granting the preliminary injunction is reversed, and the injunction is dissolved.[10]

So ordered.

---

[10] At oral argument, the parties asked this court to address the issue of whether the recall election could go forward as to Clark.  At that time, he was within six months of the end of his term, and the act provides that officials who have "more than six months remaining in the term of such office on the date of filing of the affidavit (accompanying the recall petition), may be recalled from office"  St. 1995, c. 27, § 1.  As the issue was not briefed, we decline to address it and instead leave that issue to be pursued in the trial court.