SUPERIOR COURT 
 
 JAMES FOSKETT, father and next friend of EVAN FOSKETT vs. MASSACHUSETTS INTERSCHOLASTIC ATHLETIC ASSOCIATION

 
 Docket:
 2177CV00021 B
 
 
 Dates:
 January 22, 2021
 
 
 Present:
 Jeffrey T. Karp Associate Justice, Superior Court 
 
 
 County:
 ESSEX, ss.
 

 
 Keywords:
 MEMORANDUM OF DECISION AND ORDER ON PLAINTIFF’S MOTION FOR PRELIMINARY INJUNCTION (Paper No. 5)
 
 

 Plaintiff James Foskett (“Foskett”) has filed a verified Complaint seeking relief in the nature of certiorari pursuant to G.L. c. 249, § 4. He seeks to annul the decision of defendant Massachusetts Interscholastic Athletic Association (“MIAA”) to refuse to grant Foskett’s son, Evan Foskett (“Evan”), a waiver of ineligibility to play varsity hockey at Malden Catholic High School (“MCHS”) after Evan transferred to MCHS from Haverhill High School (“HHS”) at the start of his junior year in September 2020.
On January 21, 2021, the Court conducted a hearing on Plaintiff’s Motion For Preliminary Injunction (Paper No. 5) (“Motion”). Foskett seeks to preliminarily enjoin the MIAA from enforcing its decision that Evan is ineligible to play varsity hockey at MCHS for one year.
As explained below, after thorough consideration of the parties’ submissions and the argument of counsel at said hearing, the Motion is ALLOWED.

-1-

BACKGROUND
The following facts are taken from the parties’ submissions and are not in dispute.[1]
Evan is 17 years-old and lives in Haverhill. He was educated in the Haverhill public school system his entire life until the start of this school year (i.e., September 2020) when he enrolled at MCHS for his junior year of high school. Evan played varsity hockey at HHS as a freshman (i.e., the 2018 – 2019 school year) and sophomore (i.e., the 2019 – 2020 school year).
The MIAA Regulatory Framework
The MIAA is a non-profit association of public and private member schools,  which regulates interscholastic athletics in Massachusetts. The MIAA has promulgated rules and regulations governing member schools. (See MIAA Rules And Regulations Governing Athletics, Defendant’s Opposition To Plaintiff’s Request For Injunctive Relief (Paper No. 8) (“MIAA Rules”), Ex. 3 (“D. Ex. 3”)). HHS and MCHS are members of the MIAA.
The MIAA Rules state that, subject to exemptions that are not applicable here, student athletes who played a varsity sport at a member school are ineligible to play that varsity sport for one year upon transferring to another member school. See MIAA Rule 57. Notwithstanding the aforementioned one-year period of ineligibility, the MIAA Rules set forth a process by which the student will be eligible to play sports for the transferee school. (See generally MIAA Rule 57). In such an instance, the school from which the student transferred (i.e., the transferor school) must certify in writing on a form

---------------------------

[1] Additional relevant facts are discussed, infra, in the Court’s Discussion section.

-2-

(“Form 200”) that the transfer meets certain factors, such as the transferor school has no knowledge recruitment “was involved in any way” in the transfer. MIAA Rule 57.4.
The MIAA Rules further authorize a process by which the transferee school may seek a waiver of ineligibility to play sports from the MIAA Executive Director or his/her designee. MIAA Rule 87.2. The MIAA Rules require the Executive Director to consider the following four factors when deciding whether to grant a waiver of ineligibility:
(1) the rule works an undue hardship on the student,
(2) granting the waiver will not result in an unfair competitive advantage,
(3) the waiver approval would not cause displacement of another student-athlete from the [transferee school]’s own team, and
(4) the waiver would not be in conflict with the general well-being of MIAA interscholastic athletic objectives.
MIAA Rule 87.2 (“Waiver Factors”).
“An adverse decision [regarding the waiver of ineligibility] by the Executive Director may be appealed before a  subcommittee of  the  Eligibility Review Board [“ERB”].” MIAA Rule 87.4. Furthermore, “[a]n adverse decision of the ERB may be appealed by the student’s principal for a hearing before a subcommittee of the Massachusetts Interscholastic Council [(“MIAC”)].” MIAA Rule 87.5. “The four standards that must be addressed in an appeal before the [MIAC] are” identical to the Waiver  Factors. Id.
The parties agree that “waiver hearings” before the ERB and the MIAC are not recorded and no record is kept or made of documents or testimony they receive in evidence.

-3-

Allegations Of Recruiting Violations
In September 2019, the Merrimack Valley Conference (“MVC”), of which HHS is a member, reported concerns to the MIAA that MCHS was actively recruiting MVC student athletes to play hockey at MCHS. (See Correspondence of MVC to MIAA,
Complaint (Paper No. 1), Ex. E (“Compl. Ex. E”)). The MIAA Rules strictly forbid recruiting of student athletes.
Having not heard back from the MIAA about its allegations of recruiting, the MVC wrote to the MIAA again on March 2, 2020. (Id.). On November 24, 2020, the MIAA
informed the MVC that it conducted a thorough investigation of the MVC’s concerns and concluded that it did “not receive[] clear-cut evidence of a recruiting violation.” (Id.).
The Appeal Of Denial Of The Waiver In This Matter
On October 13, 2020, HHS submitted to the MIAA the Form 200 regarding Evan’s transfer to MCHS in which it declined to certify that the factors were met that would make Evan immediately eligible to play sports at MCHS.
Thereafter, MCHS applied for a waiver of ineligibility on behalf of Evan with the MIAA Executive Director who, on November 19, 2020, declined to grant a waiver. (See
MIAA Eligibility Waiver Denial, D. Ex. 6). Thus, Evan continued to be “ineligible to participate in ice hockey for one year from the date of his transfer (September 4, 2020).” (Id.).
MCHS and Evan appealed  the denial of the waiver to  the  ERB, which  conducted  a hearing on December 8, 2020. The ERB voted unanimously (3 – 0) to deny the waiver request. (See MIAA Eligibility Appeal Hearing Decision, D. Ex. 7). MCHS, on behalf of
Evan, appealed that decision to the MIAC.
On December 15, 2020, the MIAC conducted a hearing on Evan’s appeal of the ERB’s denial of the waiver. (See MIAC Appeal Hearing Decision, Compl. Ex. A) (“MIAC

-4-

Decision”). The MIAC voted unanimously (3 – 0) to uphold the decision of the ERB to deny the waiver request. (Id.).
DISCUSSION
I. THE LEGAL FRAMEWORK
“The party seeking a preliminary injunction must show ‘(1) a likelihood of success on the merits; (2) that irreparable harm will result from denial of the injunction; and (3)  that, in light of the [moving party’s] likelihood of success on the merits, the risk of irreparable harm to the [moving party] outweighs the potential harm to the [nonmoving party] in granting the injunction.’”[2] Garcia v. Department of Housing and Community Dev., 480 Mass. 736, 747 (2018) (citations omitted). “[T]he significant remedy of a preliminary injunction should not be granted unless the plaintiffs had made a clear showing of entitlement thereto.” Student No. 9 v. Board of Educ., 440 Mass. 752, 762 (2004) (citation omitted).

---------------------------

[2] “‘In an appropriate case, the risk of harm to the public interest also may be considered.’” GTE Prods. Corp. v. Stewart, 414 Mass. 721, 723 (1993) (quoting Brookline v. Goldstein, 388 Mass. 443, 447 (1983)). However, unlike here, most instances where this additional factor is considered involve a party seeking to enjoin governmental action. See e.g., Tri-Nel Mgmt. v. Board of Health, 433 Mass. 217, 219 (2001) (“When, as here, a party seeks to enjoin governmental action, the court also considers whether the relief sought will adversely affect the public.”); Commonwealth v. Mass. CRINC, 392 Mass. 79, 89 (1984) (“‘When the government acts to enforce a statute or make effective a declared policy of [the Legislature], the standard of public interest and not the requirements of private litigation measure the propriety and need for injunctive relief.’”) (citation omitted).

-5-

As stated, this action is in the nature of certiorari brought under G.L. c. 249, § 4. “[T]he animating principle behind certiorari review . . . is ‘a limited procedure reserved for correction of substantial errors of law apparent on the record created before a judicial or quasi-judicial tribunal.’” Revere v. Massachusetts Gaming Comm’n, 476 Mass. 591, 606 (2017) (citations omitted).[3]
“Generally, the standard of  review for a certiorari action is calibrated to the nature  of the action for which review is sought.” Id. at 604 (citation omitted); see also Perullo v. Advisory Comm. on Personnel Standards, 476 Mass. 829, 835 – 836 (2017) (“In an action in the nature of certiorari, ‘the standard of review may vary according to the nature of the action for which review is sought.’”) (citation omitted). “‘Ordinarily, where the action being reviewed is a decision made in an adjudicatory proceeding where evidence is presented and due process protections are afforded, a court applies the ‘substantial evidence’ standard.’” Massachusetts Gaming Comm’n, 476 Mass. at 604 (quoting Figgs v. Boston Hous. Auth., 469 Mass. 354, 361-362 (2014)). The MIAC Decision challenged by Foskett is such a decision. Accordingly, the Court will apply the “substantial evidence” standard when determining if Foskett has  demonstrated  a likelihood of success on the merits.[4]

---------------------------

[3] “‘To obtain certiorari review of an administrative decision . . . three elements must be present: (1) a judicial or quasi-judicial proceeding, (2) from which there is no other reasonably adequate remedy, and (3) a substantial injury or injustice arising from the proceeding under review.’” MacLaurin v. City of Holyoke, 475 Mass. 231, 237 (2016) (citation omitted). The MIAA does not contest the presence of those three elements here.

[4] The parties argue that the applicable standard of review is the “arbitrary or capricious” standard. The Court disagrees. “‘[W]here the decision under review was not made in an adjudicatory proceeding,’ but rather entails matters committed to or implicating a board’s exercise of administrative discretion, the court applies the ‘arbitrary or capricious’ standard.” Revere v. Massachusetts Gaming Comm’n, 476 Mass. 591, 605 (2017) (citation and quotation omitted) (original emphasis). Nevertheless, as discussed below, the standard of review is not determinative to the Court’s decision.

-6-

In the context of a review of an administrative agency decision, the substantial evidence standard is well known:
When analyzing the validity of  a[n agency] decision, a reviewing  court must determine whether the  decision  is  supported  by substantial evidence. Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a  conclusion. The burden is on the appealing party to demonstrate the invalidity of the [agency]’s decision. In conducting [the] review of such decision, [the court] give[s] due weight to the  experience,  technical competence, and specialized knowledge  of the [agency], as well as    to the discretionary authority conferred upon it. It is the province of  the [agency], not this court, to weigh the credibility of the witnesses and to resolve any factual disputes.

Doe v. Sex Offender Registry Bd., 81 Mass. App. Ct. 610, 618 (2012) (internal citations and quotations omitted).[5]
Moreover, “to determine whether an agency’s decision is supported by substantial evidence, [the court] examine[s] the entirety of the administrative record and take[s] into account whatever in the record fairly detracts from the supporting evidence’s weight.” Cobble v. Commissioner of Social Servs., 430 Mass. 385, 390 (1999).
With these legal principals in mind, the Court will determine if Foskett has met his burden to obtain a preliminary injunction.

---------------------------

[5] Although the MIAA is not a governmental administrative agency for which the appeal procedure under G.L. c. 30A would be followed, the parties do not dispute the MIAA is the functional equivalent of a quasi-public administrative agency and appellate decisions applying c. 30A may be useful to arrive at a decision in this matter.

-7-

II. THE PLAINTIFF HAS DEMONSTRATED THAT IRREPARABLE HARM WILL OCCUR IF THE PRELIMINARY INJUNCTION IS NOT GRANTED
The MIAA argues that Evan will not suffer irreparable harm if the Court declines to issue the preliminary injunction. It contends that there is no evidence that  Evan’s failure to play hockey this season will adversely affect his pursuit of a college  scholarship. The MIAA further argues that the MIAC Decision does not prevent Evan from “playing club hockey.” The Court disagrees that Evan will not suffer irreparable harm if he is ineligible to play hockey this season at MCHS.
The record is clear that Evan suffers from ADHD, and that Evan’s pediatrician “highly recommended” Evan play sports because it is “beneficial with a diagnosis of ADHD.” (Compl., Ex. J). Moreover, the denial of an injunction will result in Evan missing playing during one-quarter of his high school eligibility, a high price to pay for a student athlete. More significantly, Evan’s mother strongly believes that playing hockey, a sport Evan loves and has played “since he could walk,”  is  necessary  to  maintain  Evan’s mental health, especially under the isolating circumstances caused by the Covid-19 pandemic and Evan’s relatively recent change in  schools.[6] The  Court agrees  and  finds the record is clear that Evan will suffer irreparable harm if it denies the injunction.[7]

---------------------------

[6] On March 10,  2020, “the Governor declared a state  of  emergency to  support the Commonwealth's response to the threat of COVID-19. On March 11, 2020, the World Health Organization formally declared the expanding spread of the COVID-19 virus a global pandemic.” Committee for Public Counsel Servs. v. Chief Justice of the Trial Court,  484  Mass.  431,  433 – 434 (2020). It is well known that the limiting of in-person social interaction in response to the pandemic has resulted in feelings of isolation and loneliness in schoolchildren that can have long-term effects. See Helping Kids Cope With Loneliness During COVID-19, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/coronavirus/in-depth/help-kids-cope-with- loneliness-covid19/art-20490135, last accessed on January 22, 2021.

[7] At the hearing, Forsett argued that Evan’s ineligibility to play hockey at MCHS this season would adversely affect Evan’s college recruitment because college scouts will be unable to watch Evan play. The Court has no reason to disbelieve this information. However, no evidence regarding college recruitment of Evan is before the Court.

-8-

III. THE PLAINTIFF HAS DEMONSTRATED A LIKELIHOOD OF SUCCESS ON THE MERITS BECAUSE THE MIAC DECISION IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE
As stated above,  the Court’s determination of whether  Foskett has demonstrated    a likelihood of success on the merits is dependent on whether the  Court  believes  the MIAC Decision is supported by “substantial evidence,” as that term is defined above.
The MIAA has established a criterion, the Waiver Factors, for the MIAA Executive Director to weigh when exercising his or her discretion whether to grant a waiver of ineligibility. See MIAA Rule 87.2. The criterion has four factors (“standards”). Id. Although the decision of the MIAA to grant a waiver of ineligibility is discretionary, the Waiver Factors “must be addressed in an appeal before the [MIAC].” MIAA Rule 87.5 (emphasis added).
In the MIAC Decision, the MIAC ruled, “[it] determined the extenuating circumstances did not conclusively satisfy all of the four standards.” (Compl., Ex. 1). However, this ruling is wholly conclusory and without citation or reference to any evidence presented at the hearing (or even previously presented to the MIAA Executive Director or the ERB). In fact, the MIAC Decision is devoid of any findings of fact or references to any evidence.[8]

---------------------------

[8] The failure to provide any rationale in the MIAC Decision is best illustrated by the fact that the parties spent much effort in their submissions and at oral argument discussing allegations of recruiting of high school hockey players, in general, and of Evan, in particular, allegedly by MCHS. Presumably, the parties believe that the MIAC may have found recruiting to be an important factor in reaching its decision. Yet, the MIAC Decision does not even mention recruiting.

-9-

Moreover, the MIAC Decision fails to offer any rationale to support this  conclusory ruling other than that “it was evident during  the hearing that  the  Foskett family was aware of MIAA Rule 57.1 prior to making the decision to transfer [Evan] to a new school.” Id. The Court fails to see (and the MIAA has failed to offer an explanation) how such a finding is relevant to the MIAC’s application of the Waiver Factors, which the MIAC is required by MIAA Rule 87.5 to consider.
It is axiomatic that a reviewing court cannot find  an agency decision is supported  by substantial evidence if the decision fails to make any findings of fact and fails to offer any rationale or reasoning for its ruling. See e.g., NSTAR Elec. Co. v. Department of Pub. Utils., 462 Mass. 381, 386 (2012) (ruling it was “unable to discern the legal basis relied upon by the department [of public utilities] to support th[e] order. Further, the order fail[ed] to . . . contain sufficient subsidiary findings of fact to demonstrate that its ultimate  conclusions [we]re  supported  by substantial evidence [T]hese infirmities le[ft] [the SJC] unable to determine whether the department's order [wa]s supported by sound reasoning and fact finding.”); Capezzuto v. State Ballot Law, 407 Mass. 949, 952 (1990) (“As the defendants correctly point out, the commission's findings of fact will be upheld if supported by ‘substantial evidence.’”) (emphasis added).
It is also axiomatic that an agency decision bereft of any rationale for its ruling is arbitrary or capricious. See e.g., Frawley v. Police Commissioner of Cambridge, 473 Mass. 716, 729 (2016) (“A decision is arbitrary or capricious such that it constitutes an abuse of discretion where it ‘lacks any rational explanation that reasonable persons might support.’”) (citation omitted) (emphasis added).

-10-

The Court recognizes that it must accord the MIAA deference given its  experience and competence in the area of the regulation of interscholastic athletics. “Nevertheless, ‘[t]he principle of according weight to an agency’s discretion is ‘one of deference, not abdication.’” NSTAR Elec. Co., 462 Mass. at 387 (citations and ellipsis
omitted).
At bottom, Foskett has demonstrated a likelihood of success on the merits given the absence of even a short discussion of any facts weighed by the MIAC to reach its decision, and the complete absence of any rationale or explanation for its decision.
IV. IN LIGHT OF FOSKETT’S LIKELIHOOD OF SUCCESS ON THE MERITS, THE RISK OF IRREPARABLE HARM TO EVAN OUTWEIGHS THE POTENTIAL HARM TO THE MIAA
Lastly, the Court must determine if Foskett has demonstrated that, in light of his likelihood of success on the merits, the harm to Evan from not granting the preliminary injunction outweighs any potential harm the MIAA is likely to suffer if the injunction issues. See King v. Shank, 92 Mass. App. Ct. 837, 846 (2018) (“The typical balance of
harms analysis involves a consideration of the harm occasioned by each party with and without an injunction.”). “‘What matters as to each party is not the raw amount of irreparable harm the party might conceivably suffer, but rather the risk of such harm in light of the party’s chance of success on the merits.’” Siemens Bldg. Techs., Inc. v.
Division of Capital Asset Mgmt., 439 Mass. 759, 762 (2003) (citation omitted).
The MIAA argues that issuing the preliminary injunction “would be harmful to the MIAA’s objectives” and would harm another student-athlete on the MCHS hockey team who would lose playing time to Evan (i.e., harm the public interest). Even assuming these things are true, the balance of harms weighs in favor of granting the preliminary 

-11-

injunction. As stated, the irreparable harm to Evan is significant and the Court is confident that its decision will not impair the MIAA’s ability to govern, or significantly harm another student-athlete or the public.
Therefore, for the forgoing reasons the Motion is ALLOWED.
ORDER
For the above reasons, IT IS HEREBY ORDERED that Plaintiff’s Motion For Preliminary Injunction (Paper No. 5) is ALLOWED and the MIAC is HEREBY ENJOINED until further Order of the Court from enforcing its decision that Evan  Foskett is ineligible to play varsity hockey at Malden Catholic High School.

@Jeffrey T. Karp Associate Justice, Superior Court 

@January 22, 2021

xxz